AF Approval _____        Chief Approval _CC_ _

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                              CASE NO. 8:20-cr-402-T-60JSS

CHRISTOPHER BUONOCORE

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Maria Chapa Lopez, United States Attorney for the Middle District of

Florida, and the defendant, Christopher Buonocore, and the attorney for the

defendant, Brian Bieber, mutually agree as follows:

**A.    Particularized Terms**

    1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One through

Six of the Information.  Counts One through Six charges the defendant with

cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B) and 2261(b).

    2.    Maximum Penalties

Counts One through Six carries a maximum sentence of five

years imprisonment, a fine of $250,000, a term of supervised release of not

more than three years, and a special assessment of $100 per felony count.

Defendant's Initials _____

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.   Venue Waiver

The defendant hereby waives any and all legal challenges based upon venue, pursuant to Federal Rule of Criminal Procedure 18, to the prosecution in this district of the offense charged in Counts Three and Six of the Information, which offenses were committed in the Eastern District of New York.  Specifically, the defendant waives the right to be prosecuted for the offense conduct charged in Counts Three and Six in the district where the offenses were committed.  The defendant also agrees that all of his charges may be resolved through a plea of guilty in the Middle District of Florida, as anticipated above in paragraph A.1.  In waiving venue, the defendant specifically acknowledges that he has consulted with his attorney, and is waiving this right because it is in the defendant's interest, after reasoned reflection, to do so.

4.   Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to

Defendant's Initials _____          2

which defendant is pleading guilty.  The elements of Counts One through Six are:

First:   The defendant used any interactive computer service or electronic communication service or electronic communication system of interstate commerce to engage in a course of conduct towards another person;

Second:   The defendant engaged in the course of conduct with the intent to harass or intimidate another person; and

Third:   The defendant's course of conduct caused or would be reasonably expected to cause substantial emotional distress to the person, the person's immediate family member, or a spouse or intimate partner of that person.

5.   Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

6.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials ⟨⟨⟨⟨⟩⟩⟩⟩                    3

7.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. §§ 2264, 3663A(a) and (b), defendant
agrees to make full restitution to Victim 1, Victim 2, Victim 3, Victim 4,
Victim 5, and Victim 6. Further, pursuant to 18 U.S.C. § 3664(d)(5), the
defendant agrees not to oppose bifurcation of the sentencing hearing if the
victims' losses are not ascertainable prior to sentencing.

8.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will
recommend to the Court that the defendant be sentenced within the
defendant's applicable guidelines range as determined by the Court pursuant
to the United States Sentencing Guidelines, as adjusted by any departure the
United States has agreed to recommend in this plea agreement.  The parties
understand that such a recommendation is not binding on the Court and that,
if it is not accepted by this Court, neither the United States nor the defendant
will be allowed to withdraw from the plea agreement, and the defendant will
not be allowed to withdraw from the plea of guilty.

9.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse
information is received suggesting such a recommendation to be unwarranted,
the United States will recommend to the Court that the defendant receive a

Defendant's Initials _____                4

two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before

any federal court proceeding or federal grand jury in connection with the

charges in this case and other matters, such cooperation to further include a

full and complete disclosure of all relevant information, including production

of any and all books, papers, documents, and other objects in defendant's

possession or control, and to be reasonably available for interviews which the

United States may require.  If the cooperation is completed prior to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion at the time of sentencing recommending (1) a downward departure

from the applicable guideline range pursuant to USSG §5K1.1, or (2) the

imposition of a sentence below a statutory minimum, if any, pursuant to 18

U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

Defendant's Initials _____                    6

solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

11.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or

Defendant's Initials _____                7

incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

       (1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

       (2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order

Defendant's Initials _____       8

dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the

United States, the United States may move the Court to declare this entire plea agreement null and void.

**B.**     **Standard Terms and Conditions**

    1.     Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

Defendant's Initials _CB_          10

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any

misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.    Financial Disclosures

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information

Defendant's Initials _____          12

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court. The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

    6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to

nor bound by this agreement. The Court may accept or reject the agreement,

or defer a decision until it has had an opportunity to consider the presentence

report prepared by the United States Probation Office. The defendant

understands and acknowledges that, although the parties are permitted to

make recommendations and present arguments to the Court, the sentence will

be determined solely by the Court, with the assistance of the United States

Probation Office. Defendant further understands and acknowledges that any

discussions between defendant or defendant's attorney and the attorney or

other agents for the government regarding any recommendations by the

government are not binding on the Court and that, should any

recommendations be rejected, defendant will not be permitted to withdraw

defendant's plea pursuant to this plea agreement. The government expressly

reserves the right to support and defend any decision that the Court may make

Defendant's Initials _____        13

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this

Defendant's Initials _____    14

office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

Defendant's Initials _C B_          15

and cross-examine the witnesses against defendant, the right against
compulsory self-incrimination, and the right to compulsory process for the
attendance of witnesses to testify in defendant's defense; but, by pleading
guilty, defendant waives or gives up those rights and there will be no trial.
The defendant further understands that if defendant pleads guilty, the Court
may ask defendant questions about the offense or offenses to which defendant
pleaded, and if defendant answers those questions under oath, on the record,
and in the presence of counsel (if any), defendant's answers may later be used
against defendant in a prosecution for perjury or false statement.  The
defendant also understands that defendant will be adjudicated guilty of the
offenses to which defendant has pleaded and, if any of such offenses are
felonies, may thereby be deprived of certain rights, such as the right to vote, to
hold public office, to serve on a jury, or to have possession of firearms.

    11.   <u>Factual Basis</u>

        Defendant is pleading guilty because defendant is in fact guilty.
The defendant hereby admits that the facts set forth below are true, and were
this case to go to trial, the United States would be able to prove those specific
facts and others beyond a reasonable doubt.

Defendant's Initials _C B_        16

## **FACTS**

For the past seven years, the defendant, Christopher Buonocore, used the internet to harass, intimidate, cyberstalk, and attempt to sextort six different women, including a family member. The defendant engaged in a course of conduct that caused and was reasonably expected to cause substantial emotional distress to each of the victims. Specifically, the defendant engaged in a harassment campaign of posting to the internet sexually explicit and nude images of the victims and included personal information, such as their phone numbers, addresses, and social media profile names. The defendant also solicited individuals on the internet to contact the victims in an attempt to extort additional sexually explicit images from them, and on one occasion solicited the rape of one of the victims. The defendant also directly messaged some of the victims via text message, Facebook, and other electronic communication services. In order to conceal his identity, the defendant created multiple fictitious social media and email accounts and used a website that allowed users to post anonymously. The FBI was able to obtain a significant amount of the defendant's internet posts through their investigation. A review of the defendant's posts and interviews of the victims revealed the information below.

Defendant's Initials _C/3_                17

*Victim 1*

The defendant began dating Victim 1 in the fall of 2010. Their relationship ended in the summer of 2012. During their relationship, Victim 1 sent the defendant intimate photos of herself. In or around February 2013, strangers began contacting Victim 1 via cellphone, advising her that the defendant had been posting nude photos of her on the internet. The strangers stated they had obtained her cellphone number from a website where her photos had been posted. For approximately six years, the defendant engaged in a course of conduct intended to harass or intimidate Victim 1 by continuously and repeatedly posting sexually explicit photos of Victim 1 online. The defendant also posted to the internet Victim 1's phone number, address, and social media profile accounts online alongside the sexually explicit photos of Victim 1. Throughout this time, Victim 1 resided in Celebration, Florida, and continued to receive phone calls from strangers. At one point, Victim 1's father/father's coworker received a collage of nude photos of Victim 1.

Victim 1 suffered substantial emotional distress due to the defendant's actions. Throughout the harassment, Victim 1 had been battling a physical illness and, coupled with the online harassment, began to suffer from mental health challenges. Victim 1 stated that she had to change her phone

Defendant's Initials _____ CB _____          18

number and delete her social media due to all of the harassing messages and phone calls that she received.

### *Victim 2*

The defendant is related to Victim 2. In or around August 2016, the defendant began to post pictures of Victim 2. Victim 2 was 14 years old at the time and lived in Daytona, Florida, with her family. For approximately two years, the defendant engaged in a course of conduct intended to harass or intimidate Victim 2 by continuously and repeatedly posting photos of Victim 2 online and attempting to solicit individuals to sexually abuse Victim 2 and/or persuade, induce, entice, or coerce Victim 2 into producing child pornography. The following are examples of some of the content posted online about Victim 2:

**August 16, 2016**
[A photo of Victim 3 clothed, wearing a tank top and shorts] "Guys what do you think of [Victim 2] ? … I really find her so hot .. I get hard being in the same room"

**September 11, 2016**
[A photo of Victim 2] "Guys I really want to have sex with [Victim 2] … Pic is her .. Anyone ever feel this way? Idk what to do"

**August 10, 2018**
[A photo of Victim 2 in a bikini] "Anyone think they can get her to give up nude pics ? First to kik me gets it [defendant's kik username]"

**August 13, 2018**

Defendant's Initials _CB_          19

[A photo of Victim 2 in a bikini] "Does anyone want to send their cock to this girl? I only have Instagram kik me [defendant's kik username]"

**August 20, 2018**
[A photo of Victim 2 on a beach] "I have a strong desire to watch [Victim 2] get raped … is this normal? Pic related"
[A photo of Victim 2] "Yeah I mean I honestly would pay someone to do it"

Victim 2's immediate family suffered substantial emotional distress due to the defendant's actions. In response to the posts, Victim 2's parents have increased their home security, installing additional lighting, cameras, and changed the locks on their doors. Victim 2's parents also requested that police increase patrols in their neighborhood. Victim 2's parents also considered moving and notified Victim 2's school, explaining that one of the pictures had the name Victim 2's school on her uniform. The school security guard was informed and closely monitored Victim 2 for added safety.

*Victim 3*

The defendant and Victim 3 had been childhood friends. The defendant began harassing Victim 3 in or around October 2016. During this time, Victim 3 resided in Suffolk County, New York. Victim 3 received a text message from a random phone number containing a photo she had taken of herself when she had been 15 years old. In the photo, Victim 3 was nude from the waist up. Victim 3 recalled that she had taken and sent the picture to her

Defendant's Initials _C B_          20

then boyfriend when she was in high school many years prior. The person who sent the text message asked Victim 3 if she was the person depicted in the photo and stated if she was, then she needed to "cooperate." Over the next few months, Victim 3 received text messages and phone calls approximately every two days. The messages came from various phone numbers but, based on the content of the messages, they all appeared to be sent by the same individual. Some of the messages suggested that the individual was surveilling her. During the calls, the caller would make statements such as "you look pretty today" or "you have on a nice blue sweater." Victim 3 became frightened because she believed someone was following her. Victim 3's photos also began being posted online.

At some point during the harassment, Victim 3 realized the defendant was the person responsible for posting her pictures on the internet. Victim 3 confronted the defendant on Facebook Messenger. The defendant admitted that he had been the individual contacting Victim 3. Victim 3 took screenshots of the Facebook message and later provided it to law enforcement.

Victim 3 suffered substantial emotional distress due to the defendant's actions. Victim 3 stated she was terrified throughout the time she was being cyberstalked. Victim 3 thought someone had been following her, became suspicious of everyone that she knew, and had people walk her to her

car every night after work. Victim 3's personal relationship suffered and she lost her job because she was not able to focus at work.

### Victim 4

For at least six years, beginning in or around 2013, the defendant engaged in a course of conduct intended to harass or intimidate Victims 4 and 5 by continuously and repeatedly posting sexually explicit photos of them online. During this time, Victim 4 resided in Melbourne, which is within the Middle District of Florida. In or around November 2016, Victim 4 was notified by friends and family that nude photos of her had been posted online. Victim 4 began to receive harassing messages on Facebook and Instagram. Individuals would contact Victim 4 and threaten to distribute the photos if Victim 4 did not send more sexually explicit pictures of herself. Victim 4 also began to receive photos of male genitalia. Someone even sent sexually explicit photos of Victim 4 to Victim 4's mother, father, Victim 5, and brother in-law.

At some point in 2017, the defendant conspired with Victim 4's ex-boyfriend to procure additional sexually explicit photos of Victim 4 that the defendant then posted online. Some of the postings contained Victim 4's personal information including her name, address, telephone number, and social media accounts. The defendant solicited people online to send messages to Victim 4, demanding that she provide additional sexually explicit

Defendant's Initials _CB_                22

photographs. On one occasion, an anonymous caller telephoned Victim 4's former supervisor to notify him about the pictures. The photos were also sent to some of Victim 4's clients of the business that she currently manages.

Victim 4 suffered substantial emotional distress due to the defendant's actions. Victim 4 had difficulty sleeping and would often wake up in the middle of the night believing that she saw someone standing in her window or hovering over her. Victim 4 continues to suffer from nightmares, has difficulty trusting others, and has sought counseling due to the harassment she endured.

### Victim 5

The defendant met Victim 5 while in college through her now husband. From an unknown date, but at least as early as February 2018, and continuing through at least December 2018, the defendant engaged in a course of conduct intended to harass or intimidate Victim 5 by continuously and repeatedly posting sexually explicit photos of Victim 5 online. During this time, Victim 5 resided in Sarasota, which is within the Middle District of Florida.

Victim 5 suffered substantial emotional distress due to the defendant's actions. Victim 5 has feared that should could lose her job based on this activity. In addition, Victim 5 and her husband are in couple's therapy

Defendant's Initials _____        23

addressing issues stemming from the fact that her husband had introduced the defendant into their lives by D.M. and the defendant has caused them both considerable harm.

### *Victim 6*

The defendant began dating Victim 6 in or around 2015. During the course of their relationship, Victim 6 provided the defendant with sexually explicit photos of herself. Victim 6 ended her relationship with the defendant in or around March 2019. Beginning in or around April 2019, the defendant engaged in a course of conduct intended to harass or intimidate Victim 6 by continuously and repeatedly posting sexually explicit photos of Victim 6 online. During this time, Victim 6 resided in New York. In or around May 2019, Victim 5 contacted Victim 6 and advised her that the defendant had been posting sexually explicit photos of her on the internet. Victim 6 reviewed some of the images and identified herself in the images and recognized them as being the same photos she had taken and sent the defendant during their relationship. Victim 6 confronted the defendant about his actions and asked him to stop. The defendant responded, "ok it's done."

Victim 6 suffered substantial emotional distress due to the defendant's actions. Victim 6 explained that she feels violated and tries not think about what the defendant has done because it upsets her too much.

Defendant's Initials _C B_          24

12.     Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___9___ day of December, 2020.

MARIA CHAPA LOPEZ
United States Attorney

Christopher Buonocore
Defendant

Lisa M. Thelwell
Assistant United States Attorney

Brian Bieber
Attorney for Defendant

Carlton C. Gammons
Assistant United States Attorney
Chief, Special Victims Section

Defendant's Initials ___CB___                    25