UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA (TAMPA)
Case No.: 8:20-CR-00402-TPB-JSS-1

**UNITED STATES OF AMERICA,**

    Plaintiff,

vs.

**CHRISTOPHER BUONOCORE,**

    Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM AND
REQUEST FOR A REASONABLE SENTENCE**

Defendant, **CHRISTOPHER BUONOCORE ("Mr. Buonocore")**, by and through undersigned counsel, hereby files this Sentencing Memorandum and moves this Court pursuant to 18 U.S.C. § 3553(a) to impose a reasonable sentence, all facts and circumstances considered.

### I.    INTRODUCTION

Given the mitigating factors set forth herein, Mr. Buonocore respectfully requests this Court impose a reasonable sentence below the advisory guideline range. Such a sentence would be sufficient—but not greater than necessary—to satisfy the factors outlined in 18 U.S.C. § 3553(a). See Kimbrough v. United States, 552 U.S. 85, 101 (2007). Except for the offense conduct at issue here, Mr. Buonocore has led an exemplary and law-abiding life. Mr. Buonocore's early acceptance of responsibility, unique family circumstances, the public and private embarrassment of a felony conviction, and the negative impact same will have on Mr. Buonocore for the remainder of his life all provide ample justification for the Court to impose a below-guideline sentence.

## II.     PROCEDURAL HISTORY

1.      On December 17, 2020, Mr. Buonocore was charged by Information with six (6) counts of cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(B). (D.E. 1).

2.      On January 14, 2021, Mr. Buonocore pled guilty to the Information. (D.E. 13).

3.      Sentencing is set for August 12, 2021, at 10:00 AM. (D.E. 30).

## III.    ADVISORY GUIDELINES CALCULATIONS

### A.     UNCONTESTED GUIDELINE PROVISIONS

U.S.S.G. §2A6.2 is the applicable guideline for violations of 18 U.S.C. §§ 2261A(2)(B) and 2261(B). The six (6) counts cannot be grouped. See U.S.S.G. §3D1.2. The base offense level for Counts One, Three, Four, Five and Six is eighteen (18), respectively. See U.S.S.G. §2A6.2(a). Pursuant to U.S.S.G. §2A6.2(b)(1)(E), a two (2)-level increase applies to Counts One, Three, Four, Five, and Six because Mr. Buonocore engaged in a pattern of activity involving stalking, threatening, harassing, or assaulting the same victims. Thus, the adjusted offense levels for Counts One, Three, Four, Five, and Six should be twenty (20).

Since the six counts cannot be grouped under U.S.S.G. §3D1.2, and if the Court sustains Mr. Buonocore's objection to the Probation Office's guideline calculation for Count 2 (detailed below), five (5) levels should be added to the combined offense level. See U.S.S.G. §3D1.4. Thus, the proper combined adjusted offense level is twenty-five (25).

### B.     CONTESTED GUIDELINE PROVISIONS

Over Mr. Buonocore's objection, the Probation Office calculated his adjusted offense level for Count Two by using U.S.S.G. §2G2.1(a), the guideline for sexual exploitation of a minor by production of sexually explicit visual or printed material, by application of the "cross reference" provision of U.S.S.G. §2A6.2(c). For the reasons set forth below, and because the interests of

justice require it, this Court should calculate the advisory guideline range in the manner Mr. Buonocore submits is legally and factually proper.

### 1. The Plain Language of the Guidelines Manual States U.S.S.G. §2A6.2 is the Applicable Guideline for Violations of 18 U.S.C. §§ 2261A(2)(B) and 2261(B).

Appendix A of the U.S.S.G. Statutory Index specifies U.S.S.G. §2A6.2 is the applicable guideline for violations of 18 U.S.C. §§ 2261A(2)(B) and 2261(B). On the other hand, U.S.S.G. §2G2.1 applies when a violation of 18 U.S.C. § 1591 (sex trafficking of children), 18 U.S.C. § 2251 (sexual exploitation of children), or 18 U.S.C. § 2260 (production of sexually explicit depictions of a minor for importation into the United States) occurs. Mr. Buonocore was not charged with violating any of these statutes, nor did he plead guilty to same.

### 2. Application of U.S.S.G. §2G2.1 Violates Mr. Buonocore's Substantive Due Process Rights

From a factual standpoint, Mr. Buonocore did not traffic children, sexually exploit children, or actually solicit production of child pornography. The statements related to K.W. that Mr. Buonocore posted on these internet forums were purely fantastical; not based in reality whatsoever. No overt acts were ever taken by him to facilitate the rape of K.W. or to produce pornographic images of her. "Fantasizing about committing a crime, even a crime of violence against a real person whom you know, is not a crime." See United States v. Valle, F.3d 508, 511 (2d. Cir. 2015). There is a line between fantasy and criminal intent. Id. The Government has not been given the power to punish us for our thoughts, only our actions. Id.

Using U.S.S.G. §2G2.1 would result in an unconstitutional effort to increase Mr. Buonocore's advisory guideline range. Essentially, the Probation Office decided Mr. Buonocore is guilty of a crime for which he was not charged, did not plead guilty to, and did not commit. Sentencing Mr. Buonocore in this fashion would violate his substantive due process rights under

3

the Fifth Amendment to the U.S. Constitution and undermine the integrity of the plea-bargaining system.

Mr. Buonocore's substantive due process rights would be violated by the application of an incorrect guideline that produces a higher advisory guideline range. "[B]ecause the Guidelines exert their force whenever a district court complies with the federal sentencing scheme by first calculating the Guidelines range, a miscalculation in the Guidelines range runs the risk of affecting the ultimate sentence *regardless of* whether the court ultimately imposes a sentence within or outside that range." United States v. Rosales-Miranda, 755 F.3d 1253, 1259-60 (10th Cir. 2014) (citing United States v. Langford, 516 F.3d 205, 217 (3d. Cir. 2008)) ("when the starting point for the § 3553(a) analysis is incorrect, the end point, i.e., the resulting sentence, can rarely be shown to be unaffected.").

The adjusted offense level for Count Two should be the same as the adjusted offense level for the other five counts, i.e., twenty (20).

**C.     TOTAL OFFENSE LEVEL**

All six (6) counts, appropriately calculated, have the same adjusted offense level of twenty (20). Since they cannot be grouped under U.S.S.G. §3D1.2, five (5) levels are added to the offense level. See U.S.S.G. §3D1.4. Thus, the combined adjusted offense level is twenty-five (25).

Pursuant to the Plea Agreement, Mr. Buonocore is entitled to a two (2) level downward adjustment for acceptance of responsibility. See Plea Agreement (D.E. 5); see also U.S.S.G. §3E1.1(a). Additionally, the Government has agreed to file a motion requesting an additional one (1) level decrease under U.S.S.G. §3E1.1(b) due to Mr. Buonocore's cooperation in the investigation of his misconduct. (D.E. 5). Accordingly, the resulting total offense level is twenty-

two (22). A total offense level of twenty-two (22) and a criminal history category of I yield a sentencing guideline range of forty-one (41) to fifty-one (51) months of imprisonment.

However, the mitigating factors set forth below justify a downward departure or variance from the advisory guideline range.

## IV.     REQUEST FOR A REASONABLE SENTENCE

As this Court well knows, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009) (emphasis on original); see also Gall v. United States, 552 U.S. 38, 39 (2007) (a district judge **"may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented**."). "The corollary of that proposition is that district judges have an obligation to consider whether a sentence other than a Guidelines sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing" under 18 U.S.C. § 3553(a). See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring).

Unless otherwise prohibited by law, this Court "may consider, without limitation, any information concerning the background, character and conduct of [a] defendant." U.S.S.G. § 1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

18 U.S.C. § 3553(a) obliges the Court, "in determining the particular sentence to be imposed[,]" to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to—

5

  (A)  reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

  (B)  provide adequate deterrence to criminal conduct;

  (C)  protect the public from future crimes of the defendant; and

  (D)  provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

  (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

   \*   \*   \*   \*

(5) any pertinent policy statement—

   \*   \*   \*   \*

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

  Mr. Buonocore respectfully asks this Court to look beyond the advisory sentencing guideline range and focus on the principles pronounced by the United States Supreme Court and the factors set forth in 18 U.S.C. § 3553(a) and thereafter impose a reasonable sentence.

### A. **MITIGATING FACTORS**

### 1. **THE HISTORY AND CHARACTERISTICS OF CHRISTOPHER BUONOCORE**

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Yet these factors are given no weight in the guideline calculation; indeed, the guidelines recognize only the defendant's criminal record (providing for higher offense levels for a greater criminal history, rather than reductions for no prior record). See Rita v. United States, 551 U.S. 338, 364-65 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that § 3553(a) authorizes the sentencing judge to consider."); see also United States v. Prosperi, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming a downward variance from an advisory guideline range of 87–108 months to home detention because the guidelines did not take into account the personal characteristics of the defendant); United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on the defendant's "personal qualities indicating his potential for rehabilitation"). Therefore, we urge the Court to balance the federal sentencing guideline calculations by considering the history and characteristics of Mr. Buonocore that weigh in favor of a below-guidelines sentence.

Mr. Buonocore grew up in Wantagh, New York, and is the oldest son of John and Marie Buonocore. Until his mother was diagnosed with cancer, he enjoyed a wholesome upbringing in a loving home with his parents and younger brother, John.

For many of us, who we are and who we will one day become, is the result of a singular, defining event—one which is often completely out of our control. For Mr. Buonocore, that defining event was the loss of his mother to cancer when he was eleven (11) years old. Mr. Buonocore's mother was the one person he loved more than anyone, and to this day he still carries the immeasurable pain of her passing. For two (2) years, he watched his mother's condition deteriorate right before his eyes. Mr. Buonocore lost his mother at an age when all adolescents need their mothers' guidance most. The effects of this heartbreaking and crushing loss on Mr. Buonocore cannot be overstated, and they have permeated into every facet of his life.

Due to the loss of his mother, Mr. Buonocore has developed a sense of abandonment, and been unable to form meaningful relationships with others, especially women. He has struggled with social anxiety, depression, and even (at times) suicidal ideation for many years. Despite this devastating loss, Mr. Buonocore did his best to make a life for himself. After graduating from high school in the top 5% of his class, Mr. Buonocore studied Aerospace Engineering at the Florida Institute of Technology. Although his dream was to become a pilot, Mr. Buonocore understands any chances of that happening have been foreclosed by his own actions.

Mr. Buonocore has been regularly attending therapy for several years. He has struggled with suicidal ideations and has been placed on "suicide watch" several times in his life. We ask that the Court consider the "whole" of Mr. Buonocore, not just the conduct at issue <u>sub judice</u>. Mr. Buonocore feels immense shame and remorse for the pain he has caused his victims and his family because of his actions. Mr. Buonocore's behavior is the product of stunted emotional development and unaddressed trauma of his mother's death which he is actively working to correct. Mr. Buonocore urges the Court to acknowledge his sincere desire to better himself as a person and never reoffend again.

In its remarks on the effect of incarceration on first-time, nonviolent offenders, the court in United States v. Prosperi, 686 F.3d 32 (1st Cir. 2012), recognized the punishment inherent to those who are thrust into the criminal justice system:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed.

Id. at 48.

Mr. Buonocore respectfully requests urges the Court take his personal characteristics and life history into account when imposing sentence. None of the above is an excuse for his criminal conduct, however it provides a partial explanation.

2. **MR. BUONOCORE'S ACCEPTANCE OF RESPONSIBILITY AND COOPERATION**

One of the goals of sentencing is rehabilitation. See Williams v. New York, 337 U.S. 241, 248 (1949). A defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence." Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir.1981).

Furthermore, "[a] sentencing court has the power to consider a defendant's cooperation under §3553(a), irrespective of whether the Government files a §5K1.1 motion"). United States v. Robinson, 741 F.3d 588 (5th Cir. 2014); see also United States v. Landrón-Class, 696 F.3d 62 (1st Cir. 2012); United States v. Massey, 663 F.3d 852 (6th Cir. 2011); United States v. Leiskunas, 656 F.3d 732 (7th Cir. 2011); United States v. Doe, 398 F.3d 1254 (10th Cir. 2005).

Unlike defendants who never acknowledge their wrongful behavior, Mr. Buonocore promptly accepted responsibility for the conduct at issue here. He has openly and honestly disclosed information relating to the offenses of his convictions.

In an effort to remedy the harm his actions caused, Mr. Buonocore, through counsel, has removed as many of the photographs of the victims he posted on the internet forums as possible. To date, a total of 734 photographs have been taken down from www.archived.moe, the website hosting the images.[1] Mr. Buonocore understands there is no excuse for his conduct, but he hopes that his victims and the Court see he is truly remorseful for what he has done.

Mr. Buonocore's cooperation and complete acceptance of responsibility for his actions weigh in favor of this Court granting a downward departure or variance below the advisory guideline range. See Roberts v. United States, 445 U.S. 552, 558 (1980) (stating a defendant's cooperation demonstrates that the defendant "will transgress no more…respond to rehabilitative efforts…[and] not deem himself at war with his society.")

### 3. DETERRENCE DOES NOT REQUIRE INCARCERATION IN ALL CASES

A lengthy term of incarceration "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall 552 U.S. at 54. The United States Sentencing Commission has recognized that alternatives to incarceration "divert offenders from the criminogenic effects of imprisonment which include contact with more serious offenders,

---

[1] These were images of victims S.D. and M.C. A total of 718 photographs of S.D. have been removed. 16 photographs of M.C. have also been taken down. The photographs primarily consisted of nude images of the victims, including some that featured the victims' personal identifying information.

disruption of legal employment, and weakening of family ties." See "Sentencing Options Under the Guidelines," United States Sentencing Commission (1996).[2]

Mr. Buonocore respectfully requests this Court consider that a below-guidelines sentence would afford him a better opportunity to receive the mental health treatment he so desperately needs. He is a first-time offender with the ability to be rehabilitated, and a substantial period of imprisonment is not necessary to deter him from committing any future crimes. See United States v. Autery, 555 F.3d 864 (9th Cir. 2009) (holding district court's sua sponte downward variance to probation from guidelines of forty-one (41) to fifty-one (51) months not unreasonable in part because of district court's determination that incarceration "would undermine" defendant's rehabilitation and that "probation with psychiatric treatment was a more appropriate sentence" than incarceration); see also United States v. Halsema, 180 F. App'x. 103, 104 (11th Cir. 2006) (affirming sentence of twenty-four (24) months imprisonment where guidelines called for fifty-seven (57) to seventy-one (71) months because the district court determined that a longer sentence would negatively affect the defendant's rehabilitation.); United States v. Myers, 503 F.3d 676, 687 (8th Cir. 2007) (holding the district court "did not abuse its discretion in finding that a shorter period of incarceration, with mental health treatment and supervised release, is the most effective sentence.").

In addition to the punishment imposed by this Court, Mr. Buonocore will bear the consequences of this conviction for the rest of his life. See United States v. Stewart, 590 F.3d 93, 141 (2d Cir. 2009) ("the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant"). In light of these

---

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/working-group-reports/simplification/SENTOPT.pdf

considerations, Mr. Buonocore asks this Court to vary below the advisory guideline range because a long term of imprisonment is unnecessary to deter him from committing further crimes and will permit him to receive the mental health treatment he requires.

4. **THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES**

Under 18 U.S.C. §3553(a)(6), courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Data collected from stalking cases across the country, as well as a representative sample of sentences within the Middle District of Florida, demonstrate a downward variance in this case would not lead to unwarranted sentence disparities for similarly situated defendants.

a. **NATIONAL AVERAGE LENGTH OF STALKING SENTENCES**

The United States Sentencing Commission compiled sentencing data for 64,564 cases for the 2020 fiscal year from every federal jurisdiction. See "Quarterly Data Report, Fiscal Year 2020," United States Sentencing Commission (April 2021).[3] In 15,710 (24.5%) of those cases, defendants received a downward variance from the advisory guidelines range. Id. at 11.

A total of 225 defendants were convicted of stalking offenses in fiscal year 2020.[4] Id. at 9. The average sentence for those 225 defendants was twenty-nine (29) months. Id. Of those 225 defendants, 62 of them (27.5%) received a downward variance. Id. at 27. The average sentence for those 62 defendants was eighteen (18) months, with an average downward variance equivalent to a 50.7% decrease from the bottom of the advisory guideline range. Id.

---

[3] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2020_Quarterly_Report_Final.pdf
[4] For purposes of federal sentencing data collected by the Sentencing Commission, there is no distinction between cyberstalking and physical stalking. Both offenses are grouped together under the broad category of "stalking/harassment" offenses.

Here, the advisory guideline range of forty-one (41) to fifty-one (51) months imprisonment is significantly higher than the average sentence for those convicted of stalking offenses (29 months) and is more than double the national average (18 months) for those who received downward variances. Thus, a downward variance here would conform with the need to prevent unwarranted disparities in sentencing and the need for the sentence to reflect the seriousness of the offense.

### b. REPRESENTATIVE CYBERSTALKING SENTENCES IN THE MIDDLE DISTRICT OF FLORIIDA

"[D]istrict judges have an obligation to consider whether to depart from the Guidelines sentencing range or to impose a non-Guidelines sentence in every case." See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring).

Below is a collection of sentences imposed on defendants convicted of similar or more egregious cyberstalking offenses in this District:

1) United States v. Steffen; Case No.: 18-cr-00575-JSM (Defendant sentenced to fifty-seven (57) months imprisonment and two (2) years supervised release after pleading guilty to cyberstalking for sending threatening messages over several years to six of her former colleagues using 369 false social media profiles and 18 fake email addresses).

2) United States v. Osborne; Case No.: 19-cr-00149-SPC (Defendant sentenced to forty-four (44) months imprisonment and three (3) years of supervised release for cyberstalking after sending threatening messages and mailing fecal matter, unwanted sex toys, and a dead kitten to the victim's home, among other acts of physical and electronic harassment).

3) United States v. McGuire, Case No.: 19-cr-00149-SPC (Defendant sentenced to sixty (60) months imprisonment and three (3) years of supervised release for cyberstalking after sending threatening messages and mailing fecal matter, unwanted sex toys, and a dead kitten to the victim's home, among other acts of physical and electronic harassment).

13

      4) <u>United States v. Soroushjou</u>; Case No.: 17-cr-00048-HLA (Following dismissal of cyberstalking charge pursuant to a plea agreement, defendant was sentenced to time served and three (3) years of supervised release for transmitting threatening communications over Facebook).

These four cases illustrate a downward variance from the advisory guideline range would not only be reasonable, but also commensurate with sentences pronounced in this District. We respectfully suggest the Court place greater reliance on the mitigating factors set forth herein in support of a below-guidelines sentence. <u>See</u> <u>United States v. Adelson</u>, 441 F. Supp. 2d 506, 515 (S.D.N.Y. 2006), aff'd 301 Fed. Appx 93 (2d Cir. 2008) (stating that, "where the Sentencing Guidelines provide reasonable guidance, they are of considerable help to any judge in fashioning a sentence that is fair, just, and reasonable. But where, as here, the calculations under the guidelines have run so amok that they are patently absurd on their face, a Court is forced to place **greater reliance** on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and the human being who will bear the consequences.") (emphasis added).

## 5. MR. BUONOCORE'S LOW LIKELIHOOD TO RECIDIVATE

In 2004, the Federal Sentencing Commission published a report which presented a statistical analysis of the characteristics associated with the likelihood of a person recidivating. The study showed that (1) first-time offenders were less likely to recidivate than repeat offenders; (2) college graduates were significantly less likely to reoffend than those with lower levels of educational attainment; and (3) people who received non-incarcerative sentences were less likely to reoffend than those who received sentences involving incarceration. <u>See</u> "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," United

States Sentencing Commission (May 2004) at 28-32.[5] Each of these factors supports a finding that Mr. Buonocore poses a very low risk of reoffending.

Mr. Buonocore has no prior criminal history and is described by those who know him best as an "intelligent, conscientious, and loving man." His desire to seek and remain in treatment demonstrates a willingness to better himself as a person and commitment to never again repeat his admittedly egregious behavior. His lack of prior criminal history weighs in favor of this Court varying downward from the advisory guideline range. See United States v. Tomko, 562 F.3d 558 (3d Cir. 2009) (affirming district court's sentence of probation for defendant convicted of tax evasion, where guidelines called for twelve (12) to eighteen (18) months imprisonment, in part because of the defendant's minimal criminal record.).

As further proof of the extremely low risk of Mr. Buonocore reoffending, he has religiously observed the conditions of his release pending disposition of this matter and reported to his probation officer without fail. See United States v. Munoz-Nava 524 F.3d 1137 (10th Cir. 2008) (holding district court's sentence of one year and one day in prison plus one year of home detention reasonable in drug case where guidelines were 47-56 months, partly because of defendant's "behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary" showed the defendant was unlikely to reoffend).

Mr. Buonocore respectfully requests the Court, when fashioning his sentence, to consider his extremely low likelihood of reoffending.

---

[5] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

15

## V. CONCLUSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." <u>Koon v. United States,</u> 518 U.S. 81, 113 (1996). This is one of those unique cases that merits a below-guidelines sentence.

Respectfully submitted,

**GRAYROBINSON, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Brian.Bieber@Gray-Robinson.com

By:     <u>s/Brian Bieber    </u>
        BRIAN BIEBER
        Florida Bar #8140

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 5, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Brian Bieber<br>
BRIAN BIEBER, Esq.