UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                            CASE NO. 8:20-cr-402-TPB-JSS

CHRISTOPHER BUONOCORE

**<u>UNITED STATES' SENTENCING MEMORANDUM</u>**

The United States files this sentencing memorandum requesting that this Court sentence defendant Christopher Buonocore to a term of imprisonment within his advisory guideline range followed by the maximum term of supervised release. In support thereof, the government states as follows:

**I.**    **<u>Background</u>**

    **a. Offense Conduct**

Between February 2013 and August 2019, Buonocore engaged in a harassment campaign of posting to the internet sexually explicit and nude images of the victims and included personal information, such as their phone numbers, addresses, and social media profile names. Doc. 5 at 17. Buonocore also solicited individuals on the internet to contact the victims in an attempt to extort additional sexually explicit images from them, and even went as far as to solicit someone to rape a minor child. *Id.*

1

In addition to soliciting strangers online to contact each victim, Buonocore also directly messaged some of the victims via text message, Facebook, and other electronic communication services. *Id.* In order to conceal his identity, Buonocore created multiple fictitious social media and email accounts and used the 4Chan website, which allows users to post anonymously. *Id.* Ultimately, the FBI was able to identify Buonocore as the perpetrator behind these crimes. Doc. 5 at 17.

### b.  Procedural History

On December 17, 2020, Buonocore was charged by information with six counts of cyberstalking, in violation of 18 U.S.C. § 2261A. Doc. 1. On January 14, 2021, Buonocore appeared via Zoom for his initial appearance and arraignment. Doc. 10. On that same date, Buonocore pleaded guilty to the information pursuant to a plea agreement. Docs. 5, 10. The Court adjudicated him guilty on January 28, 2021. Doc. 18. Buonocore's sentencing is scheduled for August 12, 2021. Doc. 30.

### II.  <u>Presentence Investigation Report</u>

On August 6, 2021, probation issued its Final Presentence Investigation Report ("PSR") as to the defendant. Doc. 32. Pursuant to the PSR, Buonocore's applicable Guidelines range for the underlying offense is 108 months to 135 months; he has a criminal history category of I; and the applicable period of

supervised release is not more than three years. *Id*. at ¶ 150. Defense counsel has set forth legal objections to the information stated in the PSR. *Id*. at 57. The United States agrees with U.S. Probation Office's guidelines calculation and analysis outlined in the addendum to the PSR. *Id*. at 57-59.

### III.   <u>Argument for a Guideline Sentence</u>

A Guideline sentence is necessary due to the history and characteristics of the defendant, and for both deterrence of these crimes and for the protection of the public against the defendant. *See* 18 U.S.C. § 3553(a). The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford

adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). A consideration of these factors warrants a Guideline sentence.

### a.  Nature and Circumstances of the Offense

Buonocore is a serial stalker. For a period of at least seven years, he repeatedly harassed, threatened, and stalked many people that he had met throughout his life. As outlined in the PSR, the nature and circumstances of the offense show that Buonocore was unrelenting in his efforts to terrorize each victim. As Victim 5 described it, Buonocore used his perceived anonymity on the internet to enlist "a small army" of strangers to facilitate his harassment campaign. Buonocore provided his recruits with a tactical plan that included each victim's personal identifying information, address, phone number, social media handles, and photos (both sexually explicit and otherwise) and instructed his recruits how to use the provided information to harass the victims and extort additional sexually explicit photos from them.

For years, Buonocore sought to, and did, subject each victim to a constant and consistent state of fear and emotional distress. He knew the damage that his actions caused but was unfazed by the harm he inflicted on

each victim. On at least three occasions, Buonocore was directly confronted by victims of his offenses. One year after his antics began, Victim 1 confronted Buonocore about his online behavior in or around 2014. Doc. 32 at ¶ 17. Buonocore lied and denied that he was the culprit behind the harassment. *Id.* He then continued to post sexually explicit photos of Victim 1, along with her personal information on the internet because he was "in a sharing mood." *Id.* Buonocore even acknowledged that he had learned Victim 1 had been having suicidal ideations but did not care. *Id.* He maintained his antagonistic and menacing conduct toward Victim 1, posting "there's nothing better than knowing all her info is exposed." He explained that he only regretted that he "didn't see her reaction to the exposure or blackmail for more nudes." *Id.* Additionally, Victim 3 also confronted Buonocore about his harassing online posts, as well as Buonocore's father and brother. Doc. 32 at ¶ 22. Similarly, Victim 6 confronted Buonocore in or around May 2019. *Id.* at 29. Despite the victims' requests, Buonocore continued to intimidate and harass the victims of the offenses through August 2019.

Instead of ceasing his criminal conduct when Victim 1 confronted him in 2014, Buonocore persisted in his harassment of Victim 1 and identified additional victims to terrorize, including Victim 2 – a minor child. Buonocore's conduct against Victim 2 is perhaps the vilest. For two years, Buonocore not

only posted photos of Victim 2, along with her personally identifying information online, but he actively attempted to solicit individuals to sexually abuse and/or persuade, induce, entice, or coerce Victim 2 into producing child pornography. Doc. 5 at 19, Doc. 32 ¶ 19. At the time Buonocore made these petitions to his online recruits, he *knew* that someone could very well take him up on his "100% serious" offer to "rape" Victim 2. Buonocore knew this because he had already witnessed his recruits positively respond to his requests to contact and harass Victims 1, 3, and 4, whom he had had already "exposed" online.

Buonocore spent years hiding behind a computer screen and spoofed phone numbers and social media accounts terrorizing the victims in this case. The victims have submitted impact statements to the Court in an attempt to articulate the level of trauma that they have endured due to Buonocore's actions. They each describe the emotional pain and paranoia that they still carry with them on a daily basis. In some instances, the emotional trauma has manifested in physical ailments. Buoncore's actions also had a ripple effect. It caused strain in the victims' personal relationships and professional lives.

### b. History and Characteristics of the Defendant

Nothing in Buonocore's background provides a rationale or explanation for his prolonged criminal conduct in this case. He has no criminal history. Doc.

6

32 at ¶ 91. He is college educated and had a normal childhood apart from the passing of his mother when he was 12 years old. *Id*. at ¶¶ 99, 134. Buonocore was previously diagnosed with anxiety and suffered from panic attacks. *See generally*, *id*. at ¶¶ 115 – 127; Doc. 31 at 8. Bunocore's mental health challenges, however, do not absolve him of the need to be fully held accountable for his criminal conduct.

### c. Need to Promote Respect for the Law and Need for Deterrence, Protect the Public from Further Crimes of the Defendant, and Provide Just Punishment

The need for the sentence imposed in this case to promote respect for the law and to provide adequate deterrence to criminal conduct is significant. Buonocore did not have a solitary lapse in judgment or lash out because of relational drama in his life. Buonocore has spent years of his life harassing, threatening, and terrorizing various individuals in his life, including former romantic partners, friends, and family. Many still suffer from the trauma he inflicted upon them, causing nightmares and the need for mental health treatment and counseling.

Buonocore's sustained pattern of stalking, harassment, and threats against various victims is evidence of the need to protect the public and provide just punishment. Accordingly, there is a strong need to impose a severe sentence that will serve as a warning to Buonocore and individuals considering similar

conduct. A lengthy sentence will deter comparable activities and convey that such behavior is unacceptable and will be adjudicated harshly within the Eleventh Circuit. Moreover, there is a strong need to protect the public from further crimes of the defendant. While most of Buoncore's criminal conduct was directed toward former significant others, he has also shown that he is indiscriminate and will employ the same tactics against those whom he has no dating relationship. By repeatedly terrorizing these women over a protracted period of time, Buonocore has volunteered to illustrate the repercussions for behavior a civilized society deems unacceptable.

IV.   **Conclusion**

Buonocore's sentence should fairly account for the scope of his criminal endeavors, acknowledge the harm that he has caused to the victims, and acknowledge the ramifications of his actions. For the aforementioned reasons, the United States respectfully requests that this Court issue the only reasonable sentence for the defendant—a Guideline term of imprisonment followed by 3 years supervised release.

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By:   */s/ Lisa M. Thelwell*
Lisa M. Thelwell
Assistant United States Attorney
Florida Bar No. 100809
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6358
E-mail:      lisa.thelwell@usdoj.gov

9

**U.S. v. Christopher Buonocore**          **Case No. 8:20-cr-402-TPB-JSS**

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Brian Bieber, Esq.

> */s/ Lisa M. Thelwell*
> Lisa M. Thelwell
> Assistant United States Attorney
> Florida Bar No. 100809
> 400 N. Tampa Street, Suite 3200
> Tampa, Florida 33602-4798
> Telephone:   (813) 274-6000
> Facsimile:    (813) 274-6358
> E-mail:        lisa.thelwell@usdoj.gov