```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
_____
                                   )
UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )  Case No.:  8:20-CR-402
                                   )
CHRISTOPHER BUONOCORE,             )
                                   )
        Defendant.                 )
_____)
```

**VOLUME II OF II (pp. 108-122)**

**SENTENCING PROCEEDINGS
BEFORE THE HONORABLE THOMAS P. BARBER**

**November 18, 2021
11:54 a.m. to 12:13 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**         LISA M. THELWELL, ESQUIRE
                                United States Department of Justice
                                Office of the United States Attorney
                                400 North Tampa Street
                                Suite 3200
                                Tampa, Florida 33602

**FOR THE DEFENDANT:**         BRIAN H. BIEBER, ESQUIRE
                                GrayRobinson, PA
                                333 Southeast 2nd Avenue
                                Suite 3200
                                Miami, Florida 33131

**ALSO PRESENT:**              CHRISTOPHER BUONOCORE, DEFENDANT
                                LORETTA BUSH, FBI SPECIAL AGENT

(Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.)

**REPORTED BY:**
Rebekah M. Lockwood, RDR, CRR
Official Court Reporter
(813) 317-8286 | r.lockwooduscr@gmail.com
P.O. Box 173496, Tampa, Florida 33672

1              (Call to Order of the Court)
2              THE COURT:  All right.  Hello, everyone, again.
3    We're continuing the case we went yesterday till after five on
4    United States v. Christopher -- I'm going to say it wrong, I
5    apologize -- Buonocore, Case Number 20-CR-402.
6              Please state your name for the record, starting with
7    the prosecutor.
8              MS. THELWELL:  Good morning, Your Honor, Lisa
9    Thelwell on behalf of the United States.  Seated at counsel
10   table is Special Agent Loretta Bush with the FBI.
11             MR. BIEBER:  Good afternoon.  It's still morning.
12   Brian Bieber on behalf of Christopher Buonocore, who is
13   present.
14             THE COURT:  All right.  I did say it right,
15   Buonocore.  Mr. Buonocore is still here.
16             We left off yesterday -- we basically finished the
17   sentencing, but we ran into some logistical challenges.  And so
18   we're back here to finish it up.
19             At the risk of allowing the lawyers to keep talking
20   and rearguing the case, which I don't want to have happen, is
21   there anything anybody needs to say that's new or additional
22   from yesterday?
23             MS. THELWELL:  No, Your Honor.
24             MR. BIEBER:  Nothing new on those issues from
25   yesterday, no.

1       THE COURT: All right. Very good.

2       So at this point, now, I've heard from everyone. The
3  parties have made statements on their behalf, witnesses have
4  testified. I've reviewed the presentence report, sentencing
5  memorandum, other submissions, various letters, and things of
6  that nature.

7       And pursuant to Title 18 U.S. Code Section 3551 and
8  3553, it is my judgment that the defendant, Christopher
9  Buonocore, will be committed to the custody of the Bureau of
10 Prisons for a term which I will announce momentarily.

11      Madam Probation Officer, for supervised release, the
12 maximum is three years. Is that right?

13      THE PROBATION OFFICER: Yes, Your Honor.

14      THE COURT: And can that be consecutive for each
15 count?

16      THE PROBATION OFFICER: Judge, supervised release
17 should be concurrent.

18      THE COURT: What was that you said, the rule?

19      THE PROBATION OFFICER: Yes.

20      THE COURT: What does that mean? I'm going to
21 sentence him consecutively. If it's illegal, then it will be
22 concurrent. So right now, the sentence is three years of
23 supervised release consecutive to each count, which means that
24 it's six times three in terms of the supervised release. If
25 that's not right, and it has to be changed, I'll change it.

1    But for now, that's my intent.  I think it's important that he
2    be on supervised release for as long as possible due to the
3    nature of this case.
4         While on supervised release, you must comply with the
5    mandatory and standard conditions in the Middle District of
6    Florida, including the following special conditions:
7         Number one, you must participate in a mental health
8    treatment program, outpatient or inpatient, follow the
9    probation officer's instructions regarding implementation of
10   that directive.  Further, you must contribute to the cost of
11   those services not to exceed an amount determined reasonable by
12   the probation office's sliding scale for mental health
13   treatment.
14        Most importantly of all, you shall have no contact
15   whatsoever, direct or indirect, with victims, including their
16   immediate family members or employers identified in Counts 1
17   through 6 of the information.  The initials for the victims,
18   although you know who they are, and some of them have testified
19   in court, the initials are SD, KW, TP, MC, CM, and AC.  No
20   contact whatsoever certainly means no contact via phones,
21   messages, text messages, e-mails, social media, anything of
22   that nature.  No direct or indirect contact, which also
23   includes having third parties contact any of the victims or
24   their family members or employers.
25        You also must submit to a search of your person,

1    residence, place of business, storage units under your control,
2    computers or vehicles.  And those searches are conducted by the
3    probation officer at a reasonable time and in a reasonable
4    manner based upon reasonable suspicion of contraband or
5    evidence of a violation of a condition of release.  You must
6    inform any other residents of any premises where you may be
7    residing that they are subject to a search pursuant to this
8    condition.  Failure to submit to a search may be grounds for
9    revocation.
10          You must -- you are prohibited from incurring new
11   credit charges, opening additional lines of credit, or
12   obligating yourself for any major purchases without the
13   approval of the probation officer.  And you must provide the
14   probation officer access to any requested financial
15   information.
16          I said this again, but as part of this supervised
17   release, you have no access whatsoever -- you shall have no
18   access whatsoever to social media, computers, the Internet,
19   smartphones, nothing that can go on the Internet.  So,
20   basically, as a condition of this supervised release, you are
21   done with all use of computers to go on the Internet in any
22   way, shape, or form, which is not a major penalty, in my
23   opinion, because 20 years ago, computers didn't exist.  So your
24   life will be a life without computers and the Internet once you
25   are released from custody.

```
 1              Having been convicted of a qualifying felony, you
 2   must cooperate in the collection of DNA, as directed by the
 3   probation officer.
 4              You must refrain from any unlawful use of controlled
 5   substances and must submit to one drug test within 15 days of
 6   placement on supervision and at least two periodic drug tests
 7   thereafter, as directed by the probation officer.  You must
 8   submit to random drug tests not to exceed 104 tests per year.
 9              As agreed, you shall pay restitution in the amount
10   of -- well, what is the exact number?  We said it yesterday.
11              MS. THELWELL:  Yes, Your Honor.  One moment.  It's on
12   Paragraph 162 of the PSR.  It's $164,295.01.
13              THE COURT:  Right.  Restitution in the amount of
14   $164,295.01.  This obligation is payable to the Clerk of the
15   U.S. District Court for distribution to victims.
16              While in the Bureau of Prisons custody, you must
17   either, one, pay at least $25 quarterly if you have a nonUNICOR
18   job, or two, pay at least 50 percent of your monthly earnings
19   if you have a UNICOR job.
20              Upon release from custody, you're ordered to begin
21   making payments of $100 per month, and this payment schedule
22   shall continue until such time as the Court is notified by the
23   defendant, the victim, or the government that there has been a
24   material change in your ability to pay.
25              I find that the defendant does not have the ability
```

1 to pay interest, so that is waived at this point.

2 　　　　　In addition, if you are the recipient of any stimulus
3 checks of any kind while in federal prison, a hundred percent
4 of that money must be turned over to victims to pay
5 restitution.

6 　　　　　Based on your financial status, I'm waiving the
7 imposition of a fine.

8 　　　　　Forfeiture, is there anything to forfeit here?

9 　　　　　MS. THELWELL:  No, Your Honor.

10 　　　　　THE COURT:  All right.  So that's not part of the
11 case.  He does have to pay a special assessment of $600, which
12 is due immediately.

13 　　　　　I've accepted the plea agreement because I'm
14 satisfied it adequately reflects the seriousness of the actual
15 offense, and in accepting the plea agreement, it will not
16 undermine the statutory purposes of sentencing.

17 　　　　　To the extent permitted by the plea agreement, you
18 have a right to appeal from the judgment of the sentence within
19 14 days of entry of the judgment.  Failure to appeal within 14
20 days is a waiver of your right to appeal.

21 　　　　　The government may file an appeal from the sentence.

22 　　　　　You're also advised you're entitled to the assistance
23 of counsel in taking an appeal.  If you're unable to afford a
24 lawyer, one will be provided for you.

25 　　　　　If you're unable to afford the filing fee, the clerk

1 will be directed to accept a notice of appeal without a fee.

2 Any particular place he'd like to be?

3 MR. BIEBER: Yes, Your Honor. Otisville, New York.

4 THE COURT: Okay.

5 MR. BIEBER: It's -- the full name is FCI Otisville.

6 THE COURT: All right. So that's the recommendation
7 in terms of the incarceration, which I'm going to come to
8 momentarily.

9 So we come to the reasons for the sentence. After
10 considering the advisory Sentencing Guidelines and all the
11 factors identified in Title 18 U.S. Code Section 3553(a)(1)
12 through (7), I find the sentence I'm about to impose is
13 sufficient, but not greater than necessary, to comply with the
14 statutory purposes of sentencing.

15 In this case, I will be entering a detailed
16 sentencing order that further elaborates my reasoning, but it
17 will elaborate what I'm going to cover in court right now. But
18 keep in mind, that will be a written order that will be coming.

19 When we look at this case, I've listened carefully to
20 everything, obviously, that's been presented. It goes well
21 beyond, as I've said, a normal, if there is a normal
22 cyberstalking case.

23 And what's -- what's occurred here is basically
24 something that, in my years as a judge and lawyer, I've never
25 really seen. I've seen stalking cases, but I've never seen a

1  case that happened in this way, where we have six different
2  victims, mostly unrelated.  Two of the victims are sisters, but
3  we have six victims.  We have conduct that occurred over a
4  period of several years, six to eight years.
5              We have a volume of contacts.  I mean, I heard
6  evidence, thousands of posts, sometimes hundreds per day, the
7  volume of activity that occurred here, enlisting the help of
8  other people to help with the cyberstalking.  So it wasn't just
9  one person.  That's -- I've never seen that.
10             We've got the defendant listing not only the home
11 addresses of the victims, but personal information about their
12 family members.  We've got people being victimized who had no
13 direct, personal beef with the defendant in any way, shape, or
14 form, including a victim who was a family friend from
15 elementary school and middle school with no reason to really be
16 involved with her.
17             We have his fraternity brother's then girlfriend, now
18 his wife, gets brought into this, and her sister, who,
19 according to them, and I haven't heard anything to the
20 contrary, were nothing but nice and friendly to the defendant
21 when they knew him in college, yet, years later, he's engaging
22 in the activity we've heard about here.
23             There's no -- I -- we use the word "motive."  I don't
24 understand -- you know, it's one thing to harass people that
25 you may believe have done something to you or an ex-girlfriend

1  who didn't treat you correctly in your mind.  But to randomly
2  pick out people that you've encountered throughout your life to
3  do this to is very, very troubling.
4       We have one victim, as a result of this, who says
5  that she herself attempted suicide.  That's the level of
6  behavior we're talking about.  We have photographs involving a
7  minor.  We've got the fact that he got caught by the one middle
8  school friend who reported it to his family.  His family talked
9  to him about it, and he kept doing it anyway.
10      And he's a highly intelligent guy, top three or
11 five percent of his high school class.  He got a degree in
12 aeronautical engineering, that -- you know, that's probably one
13 of the hardest degrees you can get.  I certainly couldn't have
14 gotten a degree like that.  Most lawyers I know couldn't have
15 gotten a degree like that.  So he's a smart guy, yet he engaged
16 in all this that is ultimately a campaign of -- and I'll choose
17 my words carefully, a campaign of intentional psychological
18 torture.
19      The idea of going out and doing this to people
20 intentionally to torture them, and frankly, it seems to have
21 worked, because a number of the victims, as I mentioned, have
22 sustained permanent damage.
23      So it's not a typical cyberstalking case for those
24 reasons and other reasons that I'll, of course, detail in my
25 sentencing order.

1           On the other hand, the defendant has had problems in
2  his life.  I think he has legitimate mental illness issues,
3  because this -- I know the victims think that he's making some
4  of this up, and maybe he is.  But he has been hospitalized
5  various times for mental health issues.  That's a fact.  I
6  think those are legitimate.
7           He, you know, had had something bad happen when he
8  was a little kid with his mom.  I understand that.  That
9  doesn't go away.  I agree with the point that cancer is a
10 serious thing.  I understand that.
11          To his credit, he's accepted responsibility.  He's
12 pled guilty.  He hasn't made the victims go through trial.
13 He's agreed to pay the restitution.  He has a supportive
14 family.  He's worked most of the time.  Those are all good
15 things in his -- on his side of the equation as well.
16          So I don't want to make this out to appear that he's
17 a monster, as he's described himself.  I don't think he's a
18 monster.  I think he's a person who's done something really
19 bad, and he needs to be appropriately punished for it.  But,
20 hopefully, he'll get some help, and when he gets out, he can,
21 you know, be a productive member of society.
22          So in light of that, the question is what is an
23 appropriate sentence?  And in my opinion, the appropriate
24 sentence in this case will be -- or is a sentence of -- get the
25 math right on this, two and a half years, 30 months for each

1    victim for a consecutive total of 15 years.  All right?  So
2    that's the sentence.  It's two and a half years, 30 months,
3    consecutive for each of the six victims.
4                Any objections or anything else?
5                MS. THELWELL:  No, Your Honor.
6                MR. BIEBER:  With respect to Paragraphs 128 and 132
7    of the PSR, we request that you recommend to the Bureau of
8    Prisons Mr. Buonocore participate in the RDAP program.
9                THE COURT:  All right.  So done.  I should have said
10   also, this is a hard case, and both of the attorneys here have
11   done great work, which I appreciate by both sides.
12               And, you know, Mr. Buonocore, on this kind of a case,
13   people wonder, they wonder did they do the right thing, should
14   they have taken it to trial?  I'll tell you this, if you had
15   taken this case to trial and lost, I would have maxed you out.
16   You would be doing a 30-year sentence.
17               So even a good lawyer, like you have, cannot do
18   anything with something like this.  And so don't have second
19   thoughts when you're in prison about fighting it.  Because the
20   fact that you accepted responsibility and stood up there and
21   admitted that you did it has basically saved you 15 years,
22   because I certainly would have maxed you out for this had you
23   gone to trial and lost.  All right?
24               THE PROBATION OFFICER:  Your Honor.
25               THE COURT:  Yes.

1          THE PROBATION OFFICER:  If I may.

2          THE COURT:  Yes.

3          THE PROBATION OFFICER:  I reached out to my
4    supervisor, and he directed me to the supervised release under
5    3624(e), understand that they should -- they have to run
6    concurrently.

7          THE COURT:  All right.  So the supervised release
8    legally can only be concurrent.

9          THE PROBATION OFFICER:  That's his interpretation of
10   18 U.S.C. 3624(e).

11         THE COURT:  If that's what the law is, that's what
12   the law is, and that will be my sentence.

13         Madam Clerk, when you prepare the statement of
14   reasons, just write in the statement of reasons, refer to the
15   sentencing order that the judge will be entering.  So you don't
16   have to say anything about the statement of reasons.  Just
17   refer to the sentencing order that I'll be entering.  All
18   right?

19         Anything else?  No?

20         MS. THELWELL:  No, Your Honor.

21         THE COURT:  All right.  Thank you.  Take him into
22   custody, please.

23         MR. BIEBER:  Your Honor, may we be heard on the
24   custody issue?

25         THE COURT:  Certainly.  Go ahead.

1            MR. BIEBER:  Thank you.

2            Judge, we'd respectfully request a voluntary

3   surrender.  I understand that to ask for a voluntary surrender

4   to the facility that he's designated is not likely to be

5   granted by the Court.  And I would just point out he's not a

6   risk of flight, does not have his passport, has been on bond

7   abided by all conditions since January 14th, knew after

8   yesterday that he was going to be taken into custody.  And we

9   ask that he be permitted to surrender to the Marshals Service

10  next Friday at noon after the Thanksgiving holiday in New York

11  in the Eastern District where he resides.

12           THE COURT:  Well, that's certainly a reasonable

13  request, and I thought long and hard about that, because he

14  does not have a criminal record, which I understand.  But I

15  think for the benefit of everyone here, not just the victims,

16  but for himself, I think he needs to go into custody right now,

17  get this over with before he has an opportunity to think too

18  much about it.  All right?

19           So take him into custody, please.

20           Thank you.  Court is concluded.

21         (Proceedings adjourned at 12:13 p.m.)

22

23

24

25

**CERTIFICATE OF REPORTER**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

    I, Rebekah M. Lockwood, RDR, CRR, do hereby certify that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes to the best of my knowledge, skill, and ability.

    I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

    IN WITNESS WHEREOF, I have hereunto set my hand at Tampa, Hillsborough County, Florida, this 18th day of January 2022.

_____
REBEKAH M. LOCKWOOD, RDR, CRR
Official Court Reporter
United States District Court
Middle District of Florida