IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
_____
                               )
UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
vs.                             )   Case No.:  8:20-CR-402
                                )
CHRISTOPHER BUONOCORE,          )
                                )
          Defendant.            )
_____)
```

**ZOOM VIDEOCONFERENCE**
**INITIAL APPEARANCE/DETENTION/CHANGE OF PLEA PROCEEDINGS**
**BEFORE THE HONORABLE JULIE S. SNEED**

**January 14, 2021**
**2:03 p.m. to 3:10 p.m.**

**APPEARANCES:**

| | |
|---|---|
| **FOR THE PLAINTIFF:**<br>**(Via Zoom)** | LISA M. THELWELL, ESQUIRE<br>United States Department of Justice<br>Office of the United States Attorney<br>400 North Tampa Street<br>Suite 3200<br>Tampa, Florida 33602 |
| **FOR THE DEFENDANT:**<br>**(Via Zoom)** | BRIAN H. BIEBER, ESQUIRE<br>GrayRobinson, PA<br>333 Southeast 2nd Avenue<br>Suite 3200<br>Miami, Florida 33131 |
| **ALSO PRESENT:**<br>**(Via Zoom)** | CHRISTOPHER BUONOCORE, DEFENDANT<br>KRYSTAL DE LEON, PRETRIAL SERVICES<br>VICTIMS 1 THROUGH 6 |

(Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.)

**REPORTED BY (VIA ZOOM):**
Rebekah M. Lockwood, RDR, CRR
Official Court Reporter
(813) 301-5380 | r.lockwooduscr@gmail.com
P.O. Box 173496, Tampa, Florida 33672

1           (Call to Order of the Court at 2:03 p.m.)

2           **THE COURT:**  Hello and good afternoon, everyone.

3    We're here in the case of United States v. Christopher

4    Buonocore, and it's Case 8:20-CR-402-TPB-JSS.

5           Can I have the lawyers state your appearances for the

6    record, starting with counsel for the government?

7           **MS. THELWELL:**  Good afternoon, Your Honor.  Lisa

8    Thelwell on behalf of the United States.

9           **MR. BIEBER:**  Judge, good afternoon.  Brian Bieber on

10   behalf of the defendant, who is also present via Zoom.

11          **THE COURT:**  Good afternoon to both of you.

12          Good afternoon to you, Mr. Buonocore.

13          **THE DEFENDANT:**  Good afternoon, Judge.

14          **THE COURT:**  We are here today for your proceedings in

15   this matter.

16          Normally, we would be conducting this proceeding in

17   person in the courthouse and in the courtroom, but to ensure

18   the safety of everyone and to avoid the spread of COVID-19, we

19   are conducting the proceeding by videoconference.

20          Mr. Buonocore, I do want to be sure that you agree to

21   proceed in this manner.  Do you agree to proceed in the hearing

22   by videoconference?

23          **THE DEFENDANT:**  Yes, I do, Judge.

24          **THE COURT:**  Turn your volume up a little louder,

25   Mr. Buonocore, so we can hear you.

1          **THE DEFENDANT:**  Yes, I do, Judge.

2          **THE COURT:**  And we'll be talking throughout the

3    course of this hearing, and I'll mostly be talking with you.

4          I want to be sure from Mr. Bieber, did you-all

5    discuss this issue, and do you agree as well?

6          **MR. BIEBER:**  We did discuss it.  I discussed it

7    specifically with Mr. Buonocore, and I agree, he does agree,

8    I'm satisfied that he agrees and understands his options, Your

9    Honor.

10          **THE COURT:**  All right.  I do find that Mr. Buonocore

11   has knowingly and voluntarily agreed to have this proceeding

12   conducted by videoconference, and so we will proceed.

13          I do want to mention that if any time this

14   videoconference line is compromised, I'll discontinue the

15   hearing, and we'll resume it using a different meeting ID.  I

16   also want to remind everyone that recording or broadcasting

17   this hearing remains strictly prohibited.  Also, I can see and

18   hear everyone well.  If at any time anyone is unable to see or

19   hear well, just say so, and then we will address that issue

20   right away.

21          First, Mr. Buonocore, I do want to conduct your first

22   appearance.  You're here because you have been accused of

23   committing certain crimes in a criminal information.  I'll talk

24   with you about those charges against you.  I'll also tell you

25   about your constitutional rights, and I'll also tell you about

UNITED STATES DISTRICT COURT

1   further proceedings in your case.

2           First, let me talk with you about the charges against

3   you in the information.  You have been charged in the

4   information with committing six counts of cyberstalking in

5   violation of the law in the United States.

6           Do you understand those charges against you?

7           **THE DEFENDANT:**  Yes, I do, Judge.

8           **THE COURT:**  I also want to tell you that you are

9   entitled to have an attorney in your case.  You may consult

10  with an attorney, and you may be represented by an attorney

11  during all stages of the proceeding in your case.  You do have

12  the right to retain counsel of your own choice, but if you

13  cannot afford an attorney, one would be appointed to represent

14  you at no cost to you.

15          Do you understand your right to have an attorney?

16          **THE DEFENDANT:**  Yes, I do, Judge.

17          **THE COURT:**  And you've hired Mr. Bieber?

18          **THE DEFENDANT:**  Yes, I have.

19          **THE COURT:**  All right.  I also want to advise you

20  that in connection with the charges against you, you do have

21  the right to remain silent.  You're not required to make any

22  statement to anyone, and you're not required to make any

23  statement to law enforcement.  If you've made a statement,

24  including to law enforcement, you're not required to say

25  anything more.  If you start to make a statement, you can stop

1    making that statement at any time.  You may consult with your

2    attorney before any questioning, and you may have your attorney

3    present with you during any questioning if you would like.  If

4    you make a statement during questioning, it may be used against

5    you.

6              Do you understand that right to remain silent?

7              **THE DEFENDANT:**  Yes, I do.

8              **THE COURT:**  You also have the right, if you are a

9    citizen of a foreign country, to consult with a representative

10   of that country.

11             You also have the right to have the matter of bail

12   considered.  I am prepared to consider that issue now.  Let me

13   first hear from the government.

14             **MS. THELWELL:**  Yes, Your Honor.  I've communicated

15   with defense counsel, and I do believe that there are

16   reasonable terms and conditions that can be in place to secure

17   his presence in court.

18             In also reviewing the pretrial report, I am in

19   agreement with the recommendation that pretrial services has

20   made to the Court as for bail conditions.  I do believe that in

21   speaking with Mr. Bieber, he indicated that they would be

22   willing to cosign up -- the father would be willing to cosign

23   up to a $100,000 unsecured bond.  I'm only asking for 60,000.

24   The rationale would be 10,000 per count.

25             **THE COURT:**  Mr. Bieber.  You're on mute, Mr. Bieber.

1    **MR. BIEBER:**  Okay.  Sorry, Your Honor.  All of that

2    is accurate is what I was saying.

3    **THE COURT:**  All right.  Very well.

4    I do find that there are conditions or combination of

5    conditions that are available to help ensure the safety of the

6    public and Mr. Buonocore's future appearance in Court.

7    I will impose the following conditions of release:

8    You must appear in court in accordance with all

9    notices.

10    You must not at any time for any reason leave either

11    the Middle District of Florida or the district in New York

12    where this -- some of the charges arose and where you currently

13    reside.

14    Do you-all know what district that is in Hicksville,

15    New York?

16    **MR. BIEBER:**  Yes.  Eastern, Judge.

17    **THE COURT:**  All right.  So you cannot leave the

18    Eastern District or the Middle District of Florida without

19    first obtaining permission from the Court.

20    You must not change your address, which is the

21    address in Hicksville on Bird Lane.  You shall not change that

22    address without first advising pretrial services.

23    You shall not commit a federal, state, or local crime

24    during the period of your release.

25    You shall submit to the supervision of pretrial

UNITED STATES DISTRICT COURT

1  services and report to pretrial services as they direct.

2          You have surrendered your passport to your attorney,

3  and that passport needs to be turned over to pretrial services.

4          Mr. Bieber.  You are on mute, Mr. Bieber.

5      **MR. BIEBER:**  Judge, I guess it keeps automatically

6  muting me.  So now I will know that, and I will instinctually

7  try to unmute.

8          Yes, I have the passport.  I will deal with pretrial

9  services at the conclusion of the hearing, make the

10  arrangements, get it Federal Expressed today through tomorrow.

11  My background is my home.  I was in my office.  My office

12  will -- I had to leave unexpectedly.  My office is aware of

13  that.  They have it, and they're ready to pull the trigger on

14  FedExing it.

15          Your Honor, may I just ask, being from New York, he's

16  in the Eastern District of New York.  The Southern District of

17  New York also covers Manhattan and that surrounding area.  So

18  may we expand travel to the Eastern and Southern Districts of

19  New York.  The Northern District is not necessary.  That's up

20  by Buffalo in the northern part of the state, Albany, things

21  like that.

22      **THE COURT:**  What reason does Mr. Buonocore have for

23  needing to travel to the district?  Which district did you say

24  that was?

25      **MR. BIEBER:**  The Southern District, which would cover

1  Manhattan.  It's within the hour radius.  It's kind of like,

2  you know, the tri-county area of Miami, Broward, and Palm

3  Beach.  It's that kind of equivalent.

4          **THE COURT:**  What is his reason for needing to travel

5  there?

6          **MR. BIEBER:**  I just wanted to avoid having to bother

7  the Court with travel requests and things like that.  And in my

8  experience -- being licensed in New York as well, in my

9  experience, the cases not only that I handle in New York, but

10  for people who live in New York and are charged around the

11  country, it just makes things a lot easier.  But I do not have

12  a specific reason, to answer your question, Judge, other than

13  what I explained.

14          **THE COURT:**  Ms. Thelwell, any response?

15          **MS. THELWELL:**  Your Honor, if Mr. Buonocore has to

16  work in the Southern District or otherwise has a legitimate

17  reason to be traveling to the Southern District, there would be

18  no objection from the government.

19          **THE COURT:**  All right.  And right now I don't really

20  hear of specific need to travel to the Southern District,

21  although I do understand it is within an hour's drive.

22          Mr. Buonocore, were you about to say something?

23          **THE DEFENDANT:**  Yes, Judge.  I could potentially be

24  getting a new job soon, and it would be in Manhattan for the

25  work.

UNITED STATES DISTRICT COURT

1          **THE COURT:**  All right.  Hearing that, if you have

2     reason to travel for work to the Southern District, I will

3     allow that for the purposes of work.

4          **MR. BIEBER:**  Thank you, Judge.

5          **THE COURT:**  Or as otherwise preapproved by pretrial

6     services.  And thank you, Mr. Bieber and Mr. Buonocore, for

7     explaining that further.

8          As I mentioned, you'll surrender your passport.

9     Mr. Bieber said he'll ensure that's turned over to pretrial

10    services.

11         Also, Mr. Buonocore, you shall not possess a firearm,

12    destructive device, or any other weapon.

13         You shall not use or possess any narcotics.

14         I will require that you submit to substance abuse --

15    I'm sorry, not substance abuse, but mental health evaluation

16    and treatment.

17         From your pretrial services report, it indicated that

18    you're not using marijuana at this time?

19         **THE DEFENDANT:**  No, I'm not.

20         **THE COURT:**  Do you believe that you're in need of

21    substance abuse treatment?

22         **THE DEFENDANT:**  Not at this time, no.

23         **THE COURT:**  At this time, I won't impose the

24    condition of substance abuse treatment.  However, if pretrial

25    services determines that that need exists, that is something

                    UNITED STATES DISTRICT COURT

1    that I will amend, if needed.

2            At this time, I will require that you submit to

3    mental health evaluation and participate in any treatment that

4    is directed as part of that evaluation for your mental health.

5            I will require that your father serve as a

6    third-party custodian, and that is Mr. Buonocore.  And what

7    that means is that he should help ensure that you abide by

8    these conditions of pretrial release.  I will require the

9    60,000-dollar signature bond to be cosigned by Mr. Buonocore,

10   your father.

11           You shall refrain from having any contact with any of

12   the victims or any of the witnesses in your case.

13           And you are prohibited from possessing a computer

14   or -- and that includes a smartphone or any handheld computing

15   devices or other electronic devices that are capable of

16   connecting to the Internet.  That includes you -- prohibiting

17   you from using a computer at a public library, Internet cafe,

18   place of employment, or educational facility, or -- and you

19   cannot possess any electronic data storage medium, flash drive,

20   thumb drive, compact disc, et cetera.  And you can't possess

21   those items without first obtaining permission from the Court

22   or pretrial services.

23           And I'll also require that you allow and consent to

24   pretrial services conducting an inspection of any device that

25   you do have to ensure that you are complying with this

UNITED STATES DISTRICT COURT

1    condition.  What that means is, if, for example, you are

2    granted any permission to use any electronic device, that you

3    consent to pretrial services inspecting that device.

4             Do you have any questions about these conditions,

5    Mr. Bieber?

6             **MR. BIEBER:**  I don't have a question, Judge.  Just a

7    comment, that Mr. Buonocore presently has an iPhone, which he

8    will power down and not use pursuant to the Court's bond

9    conditions.  And I've instructed him to get a new cell phone

10   that does not have Internet access.  Either, you know, one of

11   those old-school flip phones that don't have Internet access or

12   a burner phone that only dials in and out for cell phone -- for

13   communication purposes for he and I.

14            **THE COURT:**  All right.  Ms. Thelwell, are you

15   amenable to that?

16            **MS. THELWELL:**  Yes, Your Honor.

17            **THE COURT:**  All right.

18            **MS. THELWELL:**  Thank you.

19            **THE COURT:**  Thank you, Mr. Bieber and Ms. Thelwell.

20            All right.  Mr. Buonocore, do you have any questions

21   about these conditions?

22            **THE DEFENDANT:**  I just have one, that I have another

23   Court appearance, so would I be able to use a computer for

24   that, for a civil case involving these -- myself?

25            **THE COURT:**  You just need to advise pretrial services

UNITED STATES DISTRICT COURT

1    of your need to be able to use that electronic device for that

2    appearance, and you will be able to use it for the appearance.

3    It may be helpful if you -- you won't be able to use your

4    phone, but you may be able to use your father's computer device

5    or someone else's computer device for that hearing.

6              You should not have regular access to the phone that

7    Mr. Bieber mentioned that you have powered down.  It will be

8    better if you gave that phone, for example, to your father

9    who's your third-party custodian.

10             **THE DEFENDANT:**  No problem, Judge.  Thank you.

11             **THE COURT:**  All right.

12             Ms. De Leon, do you have any questions?

13             **THE PRETRIAL SERVICES OFFICER:**  No, Your Honor.  I

14   just have to give him the reporting instructions for the

15   Eastern District of New York.

16             **THE COURT:**  If you would provide that information.

17             **THE PRETRIAL SERVICES OFFICER:**  Sure.  So you're

18   going to be supervised by an officer nearby in the Eastern

19   District of New York.  They have not answered me yet.  So I'm

20   not sure who the officer will be.  But if you could just call

21   their office tomorrow morning at 10:00 a.m., and they'll give

22   you further reporting instructions.  And then if you're ready,

23   I can give you the phone number.

24             **THE DEFENDANT:**  Go ahead.

25             **THE PRETRIAL SERVICES OFFICER:**  Okay.

UNITED STATES DISTRICT COURT

1            It's (631) 712-6400.

2            **THE DEFENDANT:**  712?

3            **THE PRETRIAL SERVICES OFFICER:**  I'm sorry.  I

4    couldn't hear you very well.

5            **THE DEFENDANT:**  (631) 712-6400?

6            **THE PRETRIAL SERVICES OFFICER:**  Correct.

7            **THE COURT:**  Thank you, Ms. De Leon.  Unless you have

8    anything else, you are excused.

9            **THE PRETRIAL SERVICES OFFICER:**  Thank you, Your

10   Honor.

11           **THE COURT:**  Now, I do want to be sure that before we

12   proceed, that the government has complied with the Due Process

13   Protections Act, as required by Rule 5.  The government is

14   ordered to produce all exculpatory evidence to the defendant

15   pursuant to Brady versus Maryland and its progeny.  Failing to

16   do so in a timely manner may result in sanctions, including the

17   exclusion of evidence, adverse jury instructions, dismissal of

18   charges, and contempt proceedings.

19           Ms. Thelwell, has any such material been provided?

20           **MS. THELWELL:**  Your Honor, we have provided full

21   discovery, including anything that may be deemed exculpatory

22   for the defendant to defense counsel.

23           **THE COURT:**  Very well.

24           Now, I understand that Mr. Buonocore is interested in

25   pleading guilty.

                    UNITED STATES DISTRICT COURT

1          Mr. Bieber, do you believe that you-all have all of

2    the information that you need to be able to move forward with

3    the guilty plea hearing?

4          **MR. BIEBER:**  Yes, 100 percent, Judge.  We've

5    satisfied ourselves of that prior to today.

6          **THE COURT:**  Very well.  We will proceed.  I want to

7    mention to you and to everyone that the CARES Act, as well as

8    the Court's administrative order, it does allow me to conduct

9    the guilty plea portion of the hearing by videoconference if

10   delaying the hearing until the end of the coronavirus pandemic

11   would result in a serious harm to the interests of justice.

12         So, Mr. Bieber, would delaying the hearing until the

13   end of the pandemic, whenever that may be, would delaying it

14   result in a serious harm to the interests of justice?  Because

15   if it would, then we can proceed by videoconference.

16         **MR. BIEBER:**  There's a couple of double negatives in

17   there.  I actually don't understand the question, Judge.

18         **THE COURT:**  Yes.  So I'm trying to educate you while

19   I'm asking you the question, which is probably why it's a bit

20   confusing.

21         **MR. BIEBER:**  Okay.

22         **THE COURT:**  But the administrative order, as well as

23   the CARES Act, it allows me to conduct the proceeding by

24   videoconference, but I can only conduct it by videoconference

25   if a delay would result in a serious harm to the interest of

                    UNITED STATES DISTRICT COURT

1    justice.  Otherwise, we need to wait until the end of the

2    pandemic and conduct it in person.

3          **MR. BIEBER:**  Okay.  I was about to -- I understood

4    it.  And then you said the last sentence, and it threw me off

5    again.  So I really want to answer yes or no the right way,

6    Judge.  Repeat what I think, which I know what I think.

7    Delaying it, would that cause an injustice, is what you're

8    asking.  And it would not -- delaying it would not cause an

9    injustice.  We want to have it now.

10         **THE COURT:**  Right.  So that means that delaying it

11   would cause an injustice, because it could be delayed until

12   the -- indefinitely.

13         **MR. BIEBER:**  Okay.  That's why I get thrown off,

14   because would it -- technically, would it cause an injustice?

15   No, it wouldn't.  But it is our preference to have it handled

16   now.  So, you know, it depends on the definition of injustice.

17   I hate to sound so lawyerly, Judge.  But that's what threw me

18   off.  You understand what I'm saying?

19         **THE COURT:**  I do.  I do understand.  I acknowledge it

20   is a bit confusing, but I will tell you that because of the

21   indefinite nature of the coronavirus pandemic, we just don't

22   know exactly when it will end.  And so for your client, it may

23   result in him indefinitely delaying moving forward with the

24   guilty plea portion of his case.

25         **MR. BIEBER:**  It would cause an injustice, Judge, and

UNITED STATES DISTRICT COURT

1    we do want to proceed forward.

2           **THE COURT:**  All right.  And you've talked about this

3    issue with Mr. Buonocore?

4           **MR. BIEBER:**  I have.

5           **THE COURT:**  All right.  I do find for the reasons

6    that we've all discussed here just now that delaying the

7    hearing would result in a serious harm to the interests of

8    justice.  It appears that your client is ready to move forward.

9    You've indicated that that is his preference and your

10   preference that you move forward with resolving the case, and

11   because we don't know exactly when the pandemic will end, that

12   could result in an indefinite delay of his pleading guilty in

13   this matter.

14          Ms. Thelwell, do you have any comments?

15          **MS. THELWELL:**  No, Your Honor.

16          **THE COURT:**  All right.  I do find for the reasons we

17   stated that we will proceed because of the serious harm to the

18   interests of justice that could result, if we delay the hearing

19   further.

20          Now, I want to talk with Mr. Buonocore about a number

21   of rights that you do have.  The purpose of the guilty plea

22   portion of the hearing is for me to conduct an inquiry to be

23   sure that you do understand what it is that you're doing, and

24   also to ensure that the decision that you're making is being

25   made both knowingly and voluntarily.

1          Do you understand that?

2          **THE DEFENDANT:**  Yes, I do, Judge.

3          **THE COURT:**  In connection with this matter, it is my

4    responsibility to ask you a number of questions here today.

5    The purpose of that is to be sure that you're pleading guilty

6    freely and voluntarily with a full understanding of all of the

7    consequences of pleading guilty.

8          Do you understand that?

9          **THE DEFENDANT:**  Yes, I do, Judge.

10         **THE COURT:**  In connection with my questions in the

11   proceeding, I will ask the clerk to place you under oath in

12   just a moment.  It is important that you understand that there

13   are consequences related to that oath.  If, in responding to

14   any of my questions, you give a false answer, you can be

15   prosecuted for additional crimes, including the crimes of

16   perjury, false statement, or obstruction of justice.  And those

17   crimes would carry additional penalties beyond the penalties

18   you're facing today.

19         Do you understand that?

20         **THE DEFENDANT:**  Yes, I do, Judge.

21         **THE COURT:**  Madam Clerk.

22         **THE COURTROOM DEPUTY:**  Mr. Buonocore, will you please

23   raise your right hand?

24      (The Defendant Is Sworn.)

25         **THE COURTROOM DEPUTY:**  Please state your name for the

UNITED STATES DISTRICT COURT

1    record.

2              **THE DEFENDANT:**  Christopher Buonocore.

3              **THE COURTROOM DEPUTY:**  I'm sorry.  Can you repeat it?

4              **THE DEFENDANT:**  Christopher Buonocore.

5              **THE COURTROOM DEPUTY:**  Thank you.

6              **THE COURT:**  You may put your hand down.

7              I'm now going to ask you some questions that you

8    might consider to be personal.  I do want you to know that I'm

9    only asking you these questions to be sure that you're thinking

10   clearly.

11             First, let me ask you how old are you?

12             **THE DEFENDANT:**  I am 34 years old.

13             **THE COURT:**  How far did you go in school?

14             **THE DEFENDANT:**  College degree, bachelor's.

15             **THE COURT:**  You're able to read and write in the

16   English language?

17             **THE DEFENDANT:**  Yes, I can.

18             **THE COURT:**  In the past, what sort of work have you

19   done?

20             **THE DEFENDANT:**  I worked construction project

21   management.

22             **THE COURT:**  And the charges against you were brought

23   in a document called an information.

24             Did you review the information with your lawyer?

25             **THE DEFENDANT:**  Yes, I did, Judge.

UNITED STATES DISTRICT COURT

1          **THE COURT:**  You -- do you understand the charges

2     against you?

3          **THE DEFENDANT:**  Yes, I do.

4          **THE COURT:**  There's also a plea agreement in your

5     case that your attorney negotiated for you on your behalf.  Did

6     you review the plea agreement?

7          **THE DEFENDANT:**  Yes, I have, Judge.

8          **THE COURT:**  Have -- did you review that with your

9     attorney?

10         **THE DEFENDANT:**  Yes, I did.

11         **THE COURT:**  And do you understand it?

12         **THE DEFENDANT:**  Yes, I understand.

13         **THE COURT:**  Have you ever at any time suffered from

14    any mental disease, mental illness, or emotional disability of

15    any kind?

16         **THE DEFENDANT:**  Not diagnosed, but I have been in

17    therapy for many years.

18         **THE COURT:**  All right.  And what have you been in

19    therapy for?

20         **THE DEFENDANT:**  Anxiety, loss of my mother when I was

21    a child, and most recently, the events that caused the

22    complaint today.

23         **THE COURT:**  All right.  And you've been seeing the

24    therapist for a year?

25         **THE DEFENDANT:**  Yes, I have, Judge.

                    UNITED STATES DISTRICT COURT

1           THE COURT:  But you've not received any formal

2    diagnosis?

3           THE DEFENDANT:  Not at this time, no.

4           THE COURT:  Have you been prescribed any medication,

5    any drugs or medication for your medical condition, the

6    anxiety?

7           THE DEFENDANT:  Not recently, no.

8           THE COURT:  At all, at any time?

9           THE DEFENDANT:  In the past, I have.

10          THE COURT:  What medication were you prescribed in

11   the past?

12          THE DEFENDANT:  I do not remember the name.  I just

13   know that it was anti-anxiety medication.

14          THE COURT:  About what -- how long ago was that?

15          THE DEFENDANT:  About three, three to four years ago,

16   Judge.

17          THE COURT:  Did a medical doctor prescribe that for

18   you?

19          THE DEFENDANT:  Yes, they did.

20          THE COURT:  And what are the symptoms that you suffer

21   from related to the anxiety?

22          THE DEFENDANT:  Panic attacks, trouble sleeping, just

23   overall anxiety.

24          THE COURT:  Is there anything about the anxiety that

25   will cause you to not understand what we're discussing here

                    UNITED STATES DISTRICT COURT

```
 1    today?
 2              THE DEFENDANT:  No.  I think I should be able to
 3    understand perfectly.
 4              THE COURT:  Do you understand what we've discussed up
 5    to this point?
 6              THE DEFENDANT:  Yes, I do.
 7              THE COURT:  Have you ever had any conditions that
 8    affect your ability to think clearly?
 9              THE DEFENDANT:  No.
10              THE COURT:  Other than the anxiety and panic attacks,
11    have you suffered from any other mental health conditions?
12              THE DEFENDANT:  Not that I'm aware of, no.
13              THE COURT:  In the past 24 hours, have you taken any
14    drugs or medication of any kind at all?
15              THE DEFENDANT:  No, I have not.
16              THE COURT:  Have you had any alcoholic beverages in
17    the past 24 hours?
18              THE DEFENDANT:  No, I have not.
19              THE COURT:  Mr. Bieber, do you have any concerns
20    about your client's competence?
21              MR. BIEBER:  None, Judge.
22              THE COURT:  Ms. Thelwell, do you have any concerns?
23              MS. THELWELL:  No, Your Honor.
24              THE COURT:  Mr. Buonocore, based on my observations
25    of your demeanor and your responses to my questions, the
```

UNITED STATES DISTRICT COURT

1    statements from your lawyer and the government's lawyer, I do

2    find you to be fully competent to enter your guilty plea, if

3    that is what you would like to do.  I will mention to you if

4    you feel at any time unduly anxious or if you are in danger of

5    having a panic attack, just let me know that you need to take a

6    break, and then you can take as much time as you need.

7            Do you understand that?

8            **THE DEFENDANT:**  Yes, I do.  Thank you, Judge.

9            **THE COURT:**  I do also want to tell you that you do

10   have the right to persist with a plea of not guilty and to take

11   your case to trial.  So if at any time at all you want to

12   change your mind about entering a guilty plea, just let me know

13   that, and then you can take your case to trial.

14           Do you understand that?

15           **THE DEFENDANT:**  Yes, I understand, Judge.

16           **THE COURT:**  On the other hand, if, at the end of this

17   proceeding, you decide to enter a guilty plea and I accept your

18   guilty plea, it will become very difficult, if not impossible,

19   for you to later change your mind.

20           Do you understand that?

21           **THE DEFENDANT:**  Yes, I understand, Judge.

22           **THE COURT:**  You also have the right to have this

23   hearing conducted by what's called a United States district

24   judge.  I am a United States magistrate judge.  And I do need

25   to explain to you the difference in the two positions so that

1    you understand your right to have this hearing conducted by the

2    district judge.

3           The district judge's authority is different from my

4    authority.  The district judge has more authority.  The

5    district judge not only has the authority to conduct this

6    hearing and take your guilty plea, but it is the district judge

7    who will ultimately make the decision about whether to accept

8    your guilty plea and adjudicate you guilty.

9           If you're adjudicated guilty, it will be the district

10   judge who will impose and determine your sentence.

11          Do you understand that?

12          **THE DEFENDANT:**  Yes, I do.

13          **THE COURT:**  My authority as a magistrate judge is to

14   conduct this hearing to determine whether or not you're

15   entering a guilty plea knowingly and voluntarily.  If I make

16   that determination, what I would do is enter a report,

17   recommending to the district judge that your guilty plea be

18   accepted.  And then as I mentioned, it would be up to the

19   district judge to decide whether to accept your guilty plea and

20   adjudicate you guilty.

21          Having said that, do you understand your right to

22   have this hearing conducted by the district judge?

23          **THE DEFENDANT:**  Yes, I do.

24          **THE COURT:**  You and your attorney, by your presence

25   here today, have indicated that you would like to have me

                    UNITED STATES DISTRICT COURT

1    conduct the hearing.

2              Is that what you'd like to do?

3              **THE DEFENDANT:**  Yes, Judge.

4              **THE COURT:**  Mr. Bieber, have you-all discussed this

5    issue, and would you like to have me conduct the hearing?

6              **MR. BIEBER:**  We did, and I would.

7              **THE COURT:**  Very well.  Then we will proceed.

8              I want to talk with you again, Mr. Buonocore, about

9    the charges against you that you would be pleading guilty to.

10   And once again, that is six counts of cyberstalking.

11             Do you understand that?

12             **THE DEFENDANT:**  Yes, I do.

13             **THE COURT:**  You have been charged in what's called an

14   information.  I'm going to talk with you about the information

15   now.

16             The information is one of two types of documents that

17   could be used to prosecute felony offenses.  The other type of

18   document is called an indictment.  Both an indictment and an

19   information -- again, the information is the document that we

20   have here.  Both of them are completely legitimate, and either

21   could be used to charge you with committing a felony offense.

22             You do have the constitutional right to be charged in

23   an indictment.  I'm going to talk with you a bit more about the

24   indictment now.  An indictment is a formal charge returned by

25   what's called a grand jury.  A grand jury consists of between

1   16 to 23 people who have been selected at random from the

2   community.  Those people meet in private to decide whether or

3   not there's probable cause to believe a crime was committed and

4   that you're the person that committed that crime.

5          A grand jury can return an indictment only if at

6   least 12 of its members agree in finding probable cause.

7          Do you understand that?

8          **THE DEFENDANT:**  Yes, I do.

9          **THE COURT:**  An information, again, which is a

10  document that we have here is a formal accusation by the United

11  States Attorney charging you with having committed a criminal

12  offense.  The case has not been presented to a grand jury for a

13  probable cause determination.

14         Do you understand that?

15         **THE DEFENDANT:**  Yes, I do.

16         **THE COURT:**  You don't have to agree to have your case

17  proceed on the information.  If you would like, you could have

18  your case reviewed by a grand jury.  That said, to proceed by

19  the information, which, again, is a document that we have here,

20  you would be waiving and giving up and foregoing your right to

21  have the grand jury review your case, and you'd be waiving and

22  giving up and foregoing that indictment process.

23         Do you understand that?

24         **THE DEFENDANT:**  Yes, I do.

25         **THE COURT:**  You and your attorney have signed what's

```
 1    called a waiver of indictment.  And, again, in this document,

 2    you would be waiving and giving up your right to be prosecuted

 3    by an indictment, and you would be waiving, giving up, and

 4    foregoing the grand jury review of your case.

 5              Do you understand that?

 6              THE DEFENDANT:  Yes, I do, Judge.

 7              THE COURT:  Is that what you'd like to do?

 8              THE DEFENDANT:  Yes, I would, Judge.

 9              THE COURT:  And have you discussed this with your

10    lawyer?

11              THE DEFENDANT:  Yes, I have.

12              THE COURT:  Is it your independent and voluntarily

13    decision to waive and give up your right to have the grand jury

14    review your case?

15              THE DEFENDANT:  Yes, it is.

16              THE COURT:  Mr. Bieber, are you -- I'll sign this

17    document.  Is it your understanding that this is what your

18    client would like to do?

19              MR. BIEBER:  It is, Judge.  That's our signatures,

20    and I did discuss it in detail with him.

21              THE COURT:  Very well.  I do find that Mr. Buonocore

22    has freely and voluntarily waived and given up his right to

23    have the grand jury review his case and waived his right to

24    indictment.

25              Now, I want to talk with you, Mr. Buonocore, about
```

UNITED STATES DISTRICT COURT

1    your satisfaction with your lawyer.

2              Did you have a full opportunity to review the facts

3    and the evidence in your case in consultation with your lawyer?

4         **THE DEFENDANT:**  Yes, I did, Judge.

5         **THE COURT:**  Have you discussed with your lawyer all

6    the options that you have in your case, specifically to include

7    the option that you have to take your case to trial, if you

8    wanted to do that?

9         **THE DEFENDANT:**  Yes, I have, Judge.

10        **THE COURT:**  Has your lawyer done everything you've

11   asked him to do for you in your case?

12        **THE DEFENDANT:**  Yes, he has.

13        **THE COURT:**  Are you fully satisfied with all of the

14   advice and representation that you've received?

15        **THE DEFENDANT:**  Yes, I am satisfied.

16        **THE COURT:**  Your attorney has negotiated for you

17   what's called a plea agreement.  We're going to talk about the

18   plea agreement now.  The plea agreement is sort of like a

19   contract between you and the government.  And by that, what I

20   mean is you'll be held to the things you've agreed to in the

21   plea agreement.

22             Do you understand that?

23        **THE DEFENDANT:**  Yes, I do, Judge.

24        **THE COURT:**  The plea agreement that I have was filed

25   with the Court as Document 5.  And at the bottom of each page,

UNITED STATES DISTRICT COURT

1    there's a space for your initials, and there are initials in

2    each of those spaces.  And on the last page, there is a space

3    for your signature, and there's a signature above that line.

4            Did you initial and sign this document?

5            **THE DEFENDANT:**  Yes, I did, Judge.

6            **THE COURT:**  Now, again, we're going to review the

7    plea agreement together now.  If you have any questions at all,

8    just say so, and then you can have as much time as you would

9    like to meet and talk with your lawyer.

10           Do you understand that?

11           **THE DEFENDANT:**  Yes, I do, Judge.

12           **THE COURT:**  First, on Page 1, Paragraph 1, again,

13   this summarizes the charges that you would be pleading guilty

14   to.  Counts 1 through 6 charge you with cyberstalking.  Do you

15   understand that?

16           **THE DEFENDANT:**  Yes, I understand.

17           **THE COURT:**  Page 1, Paragraph 2 discusses the

18   potential punishment you're facing for a guilty plea as to

19   Counts 1 through 6.  Counts 1 through 6 carry a maximum

20   sentence of five years imprisonment, a fine of $250,000, a term

21   of supervised release of not more than three years, and a

22   special assessment of $100 per felony count.

23           With respect to certain offenses, the Court shall

24   order you to make restitution to any victim of the offense or

25   to the community.

1      Having said that, do you understand the potential

2  punishment you're facing?

3      **THE DEFENDANT:**  Yes, I do, Judge.

4      **THE COURT:**  Part of the potential punishment includes

5  what's called supervised release.  What supervised release is,

6  is after you're released from prison, the Court will place you

7  on supervised release, and the Court will place certain

8  conditions or restrictions on your liberty.  If you violate any

9  of those conditions while you're on supervised release, the

10  Court, after conducting a hearing, can order you back to jail

11  for an additional period of time.

12      Do you understand that?

13      **THE DEFENDANT:**  Yes, I do, Judge.

14      **THE COURT:**  Page 2, Paragraph 3 includes a venue

15  waiver.  In this provision, you're waiving and you're giving up

16  all legal challenges based on venue, pursuant to Rule 18, to

17  the prosecution in this district, in the Middle District of

18  Florida, of the offense charged in Counts 3 and 6 of the

19  information, which offenses were committed in the Eastern

20  District of New York.

21      Do you understand and agree to that?

22      **THE DEFENDANT:**  Yes, I do, Judge.

23      **THE COURT:**  You're also specifically waiving your

24  right to be prosecuted for the offense conduct charged in

25  Counts 3 and 6 in the district where the offenses were

1    committed.

2              Do you understand and agree to that?

3         **THE DEFENDANT:**  Yes, I do, Judge.

4         **THE COURT:**  You're also agreeing that all of your

5    charges may be resolved through a plea of guilt in the Middle

6    District of Florida, as we are discussing here.

7              Do you understand and agree to that?

8         **THE DEFENDANT:**  Yes, I do, Judge.

9         **THE COURT:**  In waiving of the venue, you're

10   specifically acknowledging and agreeing that you consulted with

11   your attorney.

12             Did you consult with your attorney?

13        **THE DEFENDANT:**  Yes, I did.

14        **THE COURT:**  And are you waiving your right, as we

15   have discussed, because it's in your best interest, after

16   having a reasonable time to think about it and review this

17   issue with your lawyer?

18             **THE DEFENDANT:**  Yes, I have, Judge.

19        **THE COURT:**  All right.  On page -- do you have any

20   questions at all about what we've just discussed?

21        **THE DEFENDANT:**  Not so far, Judge.

22        **THE COURT:**  Page 2, Paragraph 4 discusses the

23   elements of the offenses that you're charged with in Counts 1

24   through 6.  If you took your case to trial, the government

25   would be required to prove all of these elements beyond a

                    UNITED STATES DISTRICT COURT

1   reasonable doubt.

2           First, the government would be required to prove that

3   you used any interactive computer service or electronic

4   communication service or electronic communication system of

5   interstate commerce to engage in a course of conduct towards

6   another person; second, that you engaged in a course of conduct

7   with the intent to harass or intimidate another person; and,

8   third, that your course of conduct caused or would be

9   reasonably expected to cause substantial emotional distress to

10  the person, the person's immediate family member, or a spouse

11  or intimate partner of that person.

12          Having said that, do you understand what the

13  government would be required to prove if you took your case to

14  trial?

15          **THE DEFENDANT:**  Yes, I understand.

16          **THE COURT:**  Page 3, Paragraph 6, if the Court accepts

17  this plea agreement, the government is agreeing that it will

18  not charge you with committing any other federal criminal

19  offense that is known to the United States Attorney's Office at

20  the time this agreement was signed that relates to the conduct

21  at issue in this case.

22          What that means is, if the government knows about

23  other crimes that you have committed that are unrelated to the

24  conduct at issue in this case, they remain free to charge you

25  with committing those crimes.

                    UNITED STATES DISTRICT COURT

1          Do you understand that?

2          **THE DEFENDANT:**  Yes, I do.

3          **THE COURT:**  Page 4, Paragraph 7, here, you're

4    agreeing under the law to make full restitution to the

5    Victims 1 through 6, pursuant to the statutes in the United

6    States, and you agree not to oppose bifurcation or separation

7    of the sentencing hearing if the victims' losses are not

8    ascertainable or able to be determined prior to the time of

9    sentencing.

10          Do you understand and agree to that?

11          **THE DEFENDANT:**  Yes, I do, Judge.

12          **THE COURT:**  Page 4, Paragraph 8 discusses the

13   Sentencing Guidelines.  First, let me explain to you that the

14   sentence that you do receive, it will be determined and it will

15   be imposed by the Court, by the United States district judge

16   that I talked with you about earlier.

17          The federal sentencing law does require the Court to

18   impose a sentence on you that is reasonable, and the Court is

19   required to consider what's called the United States Sentencing

20   Guidelines in determining a reasonable sentence for you.

21          The Court's going to use those Sentencing Guidelines

22   to perform a type of a calculation to determine an appropriate

23   advisory range for your sentence.

24          The Court will use that range as a guide to help

25   determine a reasonable sentence for you.  So in determining a

1  reasonable sentence for you, the Court will consider your

2  applicable Sentencing Guidelines range, possible departures

3  under those Guidelines that might be applicable to you, and the

4  Court will also consider other factors that are provided in the

5  law.

6          Do you understand that?

7          **THE DEFENDANT:**  Yes, I do, Judge.

8          **THE COURT:**  You and your attorney may have talked

9  about the Sentencing Guidelines, and you may have talked about

10  how they apply in your case.  That is appropriate, and it is to

11  be expected.  But the fact of the matter is, there can be no

12  promises to you, and there can be no guarantees to you about

13  the sentence that you will receive.

14          Do you understand that?

15          **THE DEFENDANT:**  Yes, I do, Judge.

16          **THE COURT:**  The sentence that you receive is up to

17  the judge, and whatever your expectations are about your

18  sentence are not binding.  And you cannot later attempt to

19  withdraw your guilty plea because you thought you were going to

20  receive a different sentence.

21          Do you understand that?

22          **THE DEFENDANT:**  Yes, I understand.

23          **THE COURT:**  Now, back on Page 4, Paragraph 8, here,

24  the government is agreeing to recommend to the Court that you

25  be sentenced within your applicable Sentencing Guideline range,

UNITED STATES DISTRICT COURT

1    as determined by the Court, using the United States Sentencing

2    Guidelines as adjusted by any departure the government has

3    agreed to recommend in this plea agreement.  That could all

4    assist you with getting a better sentence.

5           Any recommendation or request that might be made by

6    either your lawyer or the government's lawyer, it is not

7    binding on the Court.  And if it is not accepted by the Court,

8    you will not be permitted to withdraw from your guilty plea or

9    this plea agreement.

10          Do you understand that?

11          **THE DEFENDANT:**  Yes, I do, Judge.

12          **THE COURT:**  Page 4, Paragraph 9, you've agreed to

13   accept responsibility, and because of that, you may receive up

14   to three levels of downward adjustment in your Sentencing

15   Guidelines.

16          That could also assist you with getting a better

17   sentence.  But that is not promised to you, and it is not

18   guaranteed to you, and if you do not receive it, it will not be

19   a basis for you to withdraw from your guilty plea or this plea

20   agreement.

21          Do you understand that?

22          **THE DEFENDANT:**  Yes, I do, Judge.

23          **THE COURT:**  Page 5, Paragraph 10, you've agreed to

24   cooperate with the government, and the government has agreed to

25   consider whether or not your cooperation qualifies as what it

1   calls substantial assistance in accordance with its policies.

2   That could assist you with getting a better sentence as well.

3           However, the determination about whether or not

4   substantial assistance has been provided or what type of action

5   the government might take related to your assistance, those

6   decisions rest solely with the government, and you cannot

7   challenge their decision about that by filing an appeal to a

8   higher court, through collateral attack, filing a separate

9   lawsuit or otherwise.

10          Do you understand that?

11          **THE DEFENDANT:**  Yes, I do, Judge.

12          **THE COURT:**  Page 10, Paragraph B1 discuss

13   restitution.  Here, it is explaining that you understand and

14   agree that the Court in addition to or in lieu of any other

15   penalty shall order you to make restitution to the victims of

16   your offense.

17          Do you understand and agree to that?

18          **THE DEFENDANT:**  Yes, I do, Judge.

19          **THE COURT:**  Also, on any count to which a plea of

20   guilt is entered, the Court shall also impose a special

21   assessment.

22          Do you understand and agree to that?

23          **THE DEFENDANT:**  Yes, I do, Judge.

24          **THE COURT:**  Page 11, Paragraph 3 highlights the fact

25   that there are immigration consequences related to a guilty

36

1   plea.  This applies if you are not a citizen of the United

2   States.  If you are not a citizen of the United States, and you

3   plead guilty and you are convicted, you may be removed from the

4   United States, denied citizenship and denied admission to the

5   United States in the future.  Again, that's if you are not a

6   citizen of the United States.

7         Do you understand that?

8         **THE DEFENDANT:**  Yes, I do, Judge.

9         **THE COURT:**  Page 13, Paragraph 6, this provision

10  explains that the Court is not a party to this plea agreement,

11  and the Court is not bound by this agreement.  The Court might

12  accept or reject this agreement or wait in making a decision

13  about that until it has an opportunity to consider a very

14  important report called a presentence report that will be

15  prepared by the probation office.

16        So although your lawyer and the government's lawyer

17  may present arguments and make recommendations to the Court

18  about the sentence that you receive, the sentence that you do

19  receive will be determined solely by the Court.

20        Do you understand that?

21        **THE DEFENDANT:**  Yes, I do, Judge.

22        **THE COURT:**  Your attorney may present arguments and

23  make recommendations to the Court, and the government's

24  attorney may do so as well.  But none of those recommendations

25  are binding on the Court, and if they are all rejected, or if

UNITED STATES DISTRICT COURT

1    any of those recommendations are rejected, you will not be

2    permitted to withdraw from your guilty plea or your plea

3    agreement.

4           Do you understand and agree to that?

5           **THE DEFENDANT:**  Yes, I do, Judge.

6           **THE COURT:**  Page 14, Paragraph 7 discusses a waiver

7    of your right to appeal your sentence to a higher court.

8           Here, you're agreeing that the Court has jurisdiction

9    over you and jurisdiction over this case, and that the Court

10   has the authority to impose any sentence on you up to the

11   statutory maximum.

12          Do you understand and agree to that?

13          **THE DEFENDANT:**  Yes, I do, Judge.

14          **THE COURT:**  You're also expressly waiving and giving

15   up our right to appeal your sentence on all grounds, including

16   the ground that the Court made a mistake in determining your

17   applicable Guideline range using the United States Sentencing

18   Guidelines.

19          Do you understand and agree to that?

20          **THE DEFENDANT:**  Yes, I do, Judge.

21          **THE COURT:**  Normally, a criminal defendant can appeal

22   his or her sentence on any ground, but in this plea agreement,

23   you're waiving and giving up your right to appeal your sentence

24   on all grounds.  There would only be four very limited grounds

25   that would remain for you to be able to appeal your sentence to

UNITED STATES DISTRICT COURT

1    a higher court; otherwise, you're giving up and waiving your

2    right to appeal your sentence to a higher court.

3              Do you understand and agree that?

4              **THE DEFENDANT:**  Yes, I do, Judge.

5              **THE COURT:**  Now, I am going to explain to you the

6    four very limited grounds that would remain for you to be able

7    to appeal your sentence to a higher court.

8              First, you can appeal on the ground that your

9    sentence exceeds your applicable Guideline range as determined

10   by the Court, using the United States Sentencing Guidelines.

11             Second, you can appeal on the ground that your

12   sentence exceeds the statutory maximum penalty.

13             Third, you can appeal on the ground that your

14   sentence violates the Eighth Amendment to the Constitution,

15   which prohibits cruel and unusual punishment.

16             And, fourth, if the government appeals, you can

17   appeal.

18             Other than those four very limited exceptions, you're

19   waiving and giving up your right to appeal your sentence to a

20   higher Court.

21             Do you understand and agree to that?

22             **THE DEFENDANT:**  Yes, I do, Judge.

23             **THE COURT:**  Did you discuss this issue with your

24   lawyer?

25             **THE DEFENDANT:**  Yes, I have.

                          UNITED STATES DISTRICT COURT

1          **THE COURT:**  And is it your independent and voluntary

2   decision to waive and give up your right to appeal your

3   sentence to a higher court?

4          **THE DEFENDANT:**  Yes, it is, Judge.

5          **THE COURT:**  Do you have any questions at all about

6   that?

7          **THE DEFENDANT:**  No, I do not, Judge.

8          **THE COURT:**  Do you have any questions at all about

9   your plea agreement?

10         **THE DEFENDANT:**  No, I do not, Judge.

11         **THE COURT:**  I do want to explain to you now that

12  parole has been abolished.  Whatever term of imprisonment you

13  do receive in your case, you will serve all of that time

14  incarcerated.  You will not be released early on parole,

15  because there is no parole.

16         Do you understand that?

17         **THE DEFENDANT:**  Yes, I understand.

18         **THE COURT:**  Also, if you do enter a guilty plea, you

19  will lose valuable civil rights.  Those rights include the

20  right to vote, the right to hold public office, the right to

21  serve on a jury, as well as the right to possess a firearm of

22  any kind.

23         Do you understand that?

24         **THE DEFENDANT:**  Yes, I do, Judge.

25         **THE COURT:**  I also want to mention that if it is

                     UNITED STATES DISTRICT COURT

1    applicable, the Court may require you to forfeit certain

2    property to the government.

3            Property that is subject to forfeiture is typically

4    either property that was used during the commission of the

5    offense that you're pleading guilty to or property that was

6    gained as a result of the offense that you're pleading guilty

7    to.

8            You may be required to forfeit that property to the

9    government.

10           Do you understand that?

11           **THE DEFENDANT:**  Yes, I do, Judge.

12           **THE COURT:**  Ms. Thelwell, is there any forfeiture

13   applicable?

14           **MS. THELWELL:**  No, Your Honor.

15           **THE COURT:**  And do you know at this point any

16   specific amount for the restitution that we've already

17   discussed?

18           **MS. THELWELL:**  I do not have an amount at this time,

19   Your Honor.

20           **THE COURT:**  All right.  Mr. Buonocore, the government

21   has explained that there is no forfeiture applicable to you.

22   But as we have discussed earlier, there is restitution that you

23   will be required to pay, but the government does not know those

24   specific amounts at this time.

25           Do you understand that?

                    UNITED STATES DISTRICT COURT

1          **THE DEFENDANT:**  Yes, I do, Judge.

2          **THE COURT:**  I also want to explain to you that

3    pleading guilty is a very significant act.  By pleading guilty,

4    you're not only admitting to the criminal charges here in

5    Counts 1 through 6, but you'd also be waiving and giving up a

6    number of very valuable constitutional trial rights.

7          I'm going to explain all of the trial rights that you

8    have now.

9          Those rights do include the right to persist with a

10   plea of not guilty and to take your case to trial.

11         At trial, you would be entitled to be represented by

12   a lawyer, and you'd be entitled to be represented during all

13   stages of the proceeding by a lawyer.  If you could not afford

14   to hire a lawyer, one would be appointed to represent you at no

15   cost to you.

16         Do you understand that?

17         **THE DEFENDANT:**  Yes, I do, Judge.

18         **THE COURT:**  At trial, under the law, you would be

19   presumed innocent of all of the charges against you, and before

20   you could be convicted, the government would be required to

21   prove that you are guilty of the offenses that you're charged

22   with beyond a reasonable doubt.

23         Do you understand that?

24         **THE DEFENDANT:**  Yes, I do, Judge.

25         **THE COURT:**  You'd also have the right to have a jury

1    of 12 people hear your case.  And all 12 of those jurors would

2    need to agree unanimously altogether that you are guilty beyond

3    a reasonable doubt before you could be convicted.

4            Do you understand that?

5            **THE DEFENDANT:**  Yes, I do, Judge.

6            **THE COURT:**  At trial, the government would call

7    witnesses and those witnesses would be required to come into

8    court and testify in front of you.  You do have the right to

9    confront those witnesses against you, that is to see them, hear

10   them, and have your lawyer question and cross-examine them.

11           Do you understand that?

12           **THE DEFENDANT:**  Yes, I do, Judge.

13           **THE COURT:**  At the trial, you would not be required

14   to prove anything.  But if you decided to do so, you do have

15   the right to present a defense in your own behalf.  You could

16   call witnesses in your own defense, and you could use the

17   Court's subpoena power to force witnesses to come to court,

18   even if they didn't want to.

19           Do you understand that?

20           **THE DEFENDANT:**  Yes, I understand.

21           **THE COURT:**  You could also testify in your own

22   defense if you wanted to do that.  On the other hand, the

23   government could not force you or compel you to testify if you

24   did not want to.  You could remain silent and not testify, and

25   the jury would be specifically instructed that it could not

1  draw any unfavorable conclusion from your silence.

2             Do you understand that?

3             **THE DEFENDANT:**  Yes, I do, Judge.

4             **THE COURT:**  You also have the right to be protected

5  from self-incrimination, which means you have the right not to

6  provide evidence that could be used against you.

7             Do you understand that?

8             **THE DEFENDANT:**  Yes, I do, Judge.

9             **THE COURT:**  If you do have any defenses at all to the

10 charges against you in your case, any defenses that you do have

11 would be lost by a guilty plea.

12            Do you understand that?

13            **THE DEFENDANT:**  Yes, I do, Judge.

14            **THE COURT:**  Do you understand all of these trial

15 rights that I've explained?

16            **THE DEFENDANT:**  Yes, I understand.

17            **THE COURT:**  Do you understand that if you plead

18 guilty, you would be giving up and you would be waiving all of

19 these trial rights, and there would be no trial?

20            **THE DEFENDANT:**  Yes, I understand.

21            **THE COURT:**  I previously explained the essential

22 elements the government would be required to prove if you took

23 your case to trial.  I'm now going to ask the government to

24 tell me the factual basis in support of these elements.

25            Please listen carefully to these facts, because the

UNITED STATES DISTRICT COURT

1    Court could rely upon these facts to help determine your

2    sentence.

3              Ms. Thelwell.

4         **MS. THELWELL:**  Yes, Your Honor.

5              Your Honor, I'm going to largely be reading from the

6    facts, as stated in the plea agreement at Document No. 5.  But

7    I have summarized some of it just for the sake of time.

8              For the past seven years, the defendant, Christopher

9    Buonocore, used the Internet to harass, intimidate, cyberstalk,

10   and attempt to sextort six different women from his past,

11   including a younger family member.

12             The defendant engaged in a pattern of hosting

13   sexually explicit and nude images of the women and included

14   personal information such as their phone numbers, addresses,

15   and social media profile names.

16             The defendant also solicited individuals on the

17   Internet to contact some of the women to attempt to extort

18   additional sexually explicit images of them, and even went as

19   far as to solicit someone to rape a younger family member.

20             The defendant also directly messaged some of the

21   victims via text message, Facebook, and other social media

22   platforms.  In order to conceal his identity, the defendant

23   created multiple fictitious social media and e-mail accounts

24   and used an anonymous online platform named 4chan.

25             As it relates to Count 1, Victim 1, for approximately

                    UNITED STATES DISTRICT COURT

1  six years, beginning in and around 2013, the defendant engaged

2  in a course of conduct intended to harass or intimidate

3  Victim 1 by continuously and repeatedly posting sexually

4  explicit photos of Victim 1 online.  Throughout his time -- or

5  throughout this time, Victim 1 resided in Celebration, Florida,

6  which is within the Middle District of Florida, and continued

7  to receive phone calls from strangers.

8          At one point, Victim 1's father and/or father's

9  coworker received a collage of nude photos of Victim 1.

10  Throughout the harassment, Victim 1 had been battling a

11  physical illness, and coupled with the online harassment,

12  Victim 1 began to suffer from mental health challenges.

13          Victim 1's phone number, address, and social media

14  profile accounts had been posted online with her photos.

15  Victim 1 stated that she had to change her phone number and

16  delete her social media due to all of the harassing messages

17  and phone calls that she had received.

18          Count 2, Victim 2.  The defendant and Victim 2 are

19  family members.  In or around August 2016, the defendant began

20  to post pictures of Victim 2 to the Internet.  Victim 2 had

21  been 14 years old at the time and lived in Daytona, Florida,

22  which is within the Middle District of Florida.

23          The following are examples of some of the content

24  posted online about Victim 2.

25          On August 16th, 2016, the defendant posted a photo of

UNITED STATES DISTRICT COURT

1    Victim 2, clothed, wearing a tank top and shirt -- and shorts,

2    stating, "Guys, what do you think of my cousin?  I find her so

3    hot.  I get hard being in the same room."  There are several

4    other messages similar to this that are outlined in the factual

5    basis at Document 5.

6         In response to the post, Victim 2's parents have

7    increased their home security, installing additional lighting,

8    cameras, and changed the locks on their doors.  Victim 2's

9    parents also requested that police increase patrols in their

10   neighborhood.  The family has also considered relocating and

11   notified Victim 2's school, explaining that one of the pictures

12   posted on the Internet had the name of the Victim 2's school on

13   her uniform.  The school security guard was informed and pays

14   close attention to Victim 2.

15        Count 3, Victim 3.  The defendant began harassing

16   Victim 3 in or around October 2016.  During this time, Victim 3

17   resided in Suffolk County, New York.

18        Victim 3 received a text message from a random phone

19   number containing a photo that she had taken of herself when

20   she had been about 15 years old.  In the photo, Victim 3 was

21   nude from the waist up.  Over the next few months, Victim 3

22   received text messages and phone calls approximately every two

23   days.  The messages came from various phone numbers, but based

24   on the content of the messages, they all appeared to be sent by

25   the same individual.  Some of these messages suggested that the

UNITED STATES DISTRICT COURT

1  individual had been surveilling her.  Victim 3 became

2  frightened because she believed someone was following her.

3       Victim 3's photos also began being posted online.

4  Victim 3 suffered some substantial emotional distress due to

5  the defendant's actions.  Victim 3 stated she was terrified

6  throughout the time she was being cyberstalked.  Victim 3

7  thought someone had been following her, became suspicious of

8  everyone that she knew, and had people walk her to her car

9  every night after work.  Victim 3's personal relationship

10  suffered, and she lost her job because she was not able to

11  focus at work.

12       Count 4, Victim 4.  For at least six years, beginning

13  in or around 2013, the defendant engaged in a course of conduct

14  intended to harass or intimidate Victims 4 and 5 by

15  continuously and repeatedly posting sexually explicit photos of

16  them online.  During this time, Victim 4 resided in Melbourne,

17  Florida, which is within the Middle District of Florida.

18       In or around November 2016, Victim 4 was notified by

19  friends and family that nude photos of her had been posted

20  online.  Victim 4 began to receive harassing messages on

21  Facebook and Instagram.  Individuals would contact Victim 4 and

22  threaten to distribute the photos if Victim 4 did not send more

23  sexually explicit photos of herself.  Victim 4 also began to

24  receive photos of male genitalia.  Someone even sent sexually

25  explicit photos of Victim 4 to Victim 4's mother, father,

1   Victim 5, and brother-in-law.

2          Victim 4 suffered substantial emotional distress due

3   to the defendant's actions.  Victim 4 had difficulty sleeping

4   and would often wake up in the middle of the night believing

5   that she saw someone standing in her window or hovering over

6   her.  Victim 4 continues to suffer from nightmares, has

7   difficulty trusting others, and has sought counseling due to

8   the harassment she endured.

9          Count 5, Victim 5.  From an unknown date, but at

10  least as early as February 2018 and continuing through at least

11  December 2018, the defendant engaged in a course of conduct

12  intended to harass or intimidate Victim 5 by continuously and

13  repeatedly posting sexually explicit photos of Victim 5 online.

14  During this time, Victim 5 resided in Sarasota, Florida, which

15  is within the Middle District of Florida.

16         Victim 5 suffered substantial emotional distress due

17  to the defendant's actions.  Victim 5 has feared that she could

18  lose her job based on this activity.  In addition, Victim 5 and

19  her husband are in couple's therapy addressing issues stemming

20  from the fact that her husband had introduced the defendant

21  into their lives, and the defendant has caused them both

22  considerable harm.

23         Count 6, Victim 6.  Beginning in or around

24  April 2019, the defendant engaged in a course of conduct

25  intended to harass or intimidate Victim 6 by continuously and

UNITED STATES DISTRICT COURT

1   repeatedly posting sexually explicit photos of Victim 6 online.

2   During this time, Victim 6 resided in New York.  Victim 6

3   suffered substantial emotional distress due to the defendant's

4   actions.  Victim 6 explained that she feels violated and tries

5   not to think about the defendant -- excuse me, about what the

6   defendant has done because it upsets her so much.

7           **THE COURT:**  All right.  Mr. Buonocore, did you hear

8   those facts as stated by the government?

9           **THE DEFENDANT:**  Yes, Judge.

10          **THE COURT:**  Are those facts true?

11          **THE DEFENDANT:**  Yes, Judge.

12          **THE COURT:**  In just a moment, I am going to ask you

13  how you plead, and at that time, you can plead either guilty or

14  you can plead not guilty.

15          But, first, let me ask you, considering all the

16  warnings and all of the information I've given you today, would

17  you still like to move forward with entering your plea?

18          **THE DEFENDANT:**  Yes, I would, Judge.

19          **THE COURT:**  Would you like to have any additional

20  time to speak with your lawyer?

21          **THE DEFENDANT:**  I don't think that is necessary,

22  Judge.

23          **THE COURT:**  As to the charges against you in

24  Counts 1, 2, 3, 4, 5, and 6 in the information, how do you

25  plead, guilty or not guilty?

1        **THE DEFENDANT:**  Guilty, Judge.

2        **THE COURT:**  Are you pleading guilty because you are

3  in fact guilty of those crimes charged against you?

4        **THE DEFENDANT:**  Yes, I am, Judge.

5        **THE COURT:**  Are you pleading guilty freely and

6  voluntarily?

7        **THE DEFENDANT:**  Yes, I am, Judge.

8        **THE COURT:**  Are you pleading guilty based on your own

9  free will?

10        **THE DEFENDANT:**  Yes, I am, Judge.

11        **THE COURT:**  Has anyone forced you or coerced you to

12  have you plead guilty?

13        **THE DEFENDANT:**  No, they have not, Judge.

14        **THE COURT:**  Has anyone threatened you to have you

15  plead guilty?

16        **THE DEFENDANT:**  No one has threatened me, Judge.

17        **THE COURT:**  Has anyone promised you anything to have

18  you plead guilty?

19        **THE DEFENDANT:**  No, they have not, Judge.

20        **THE COURT:**  Have you told the truth here in court

21  today?

22        **THE DEFENDANT:**  Yes, I have, Judge.

23        **THE COURT:**  Let me ask, Mr. Bieber, do you have --

24  are you aware of any promises made to obtain the guilty plea?

25        **MR. BIEBER:**  None.

UNITED STATES DISTRICT COURT

1          **THE COURT:**  And are you satisfied your client is

2     pleading guilty freely and voluntarily?

3          **MR. BIEBER:**  Yes, Judge.

4          **THE COURT:**  Ms. Thelwell, are you aware of any

5     promises made to obtain the guilty plea?

6          **MS. THELWELL:**  No, Your Honor.

7          **THE COURT:**  I'll make my findings in just a moment.

8          But, first, let me ask the lawyers, is there anything

9     further that you would like to have inquired about or placed on

10    the record?

11         **MS. THELWELL:**  No, Your Honor.

12         I will acknowledge, though, for the Court that I

13    believe the majority, if not all, of the victims are present on

14    the Zoom hearing.

15         **THE COURT:**  All right.  And are they interested in

16    making any statement at this time, or will they make those

17    statements at the sentencing, if at all?

18         **MS. THELWELL:**  My understanding is that they will

19    make those statements at the sentencing, Your Honor.

20         **THE COURT:**  Mr. Bieber, do you have anything further

21    that you would like to have inquired about or placed on the

22    record?

23         **MR. BIEBER:**  No, Your Honor.

24         **THE COURT:**  Mr. Buonocore, based on my review of the

25    information, as well as the plea agreement, as well as my

                    UNITED STATES DISTRICT COURT

1   discussions here with you today, and the statements from your

2   lawyer, as well as the government's lawyer, and the factual

3   basis provided by the government, I am fully satisfied that

4   you're competent to enter your guilty plea.  You have conducted

5   yourself fully appropriately here in court today.  You have

6   been attentive.  You have been focused on our discussions here

7   today, and you at all times appear to be calm and at ease and

8   have demonstrated at least in court today no symptoms of your

9   anxiety.  At least you don't appear to be anxious outwardly,

10  and it appeared that you were in control of yourself with

11  respect to your emotional health that we discussed earlier

12  today.  You appear to be fully competent.

13          I'm also fully satisfied that your guilty plea is

14  being entered both knowingly and voluntarily.  I'm also

15  satisfied that you do understand the nature of the charges that

16  you're pleading guilty to, and that you do understand the

17  consequences of your guilty plea.

18          I also find that your guilty plea is supported by an

19  independent factual basis as to each of the essential elements

20  of the charges against you.

21          I also find you've entered your guilty plea after

22  having the advice and representation from a lawyer that you say

23  you are satisfied with.

24          Therefore, I am going to enter a report.  I'll be

25  recommending that your guilty plea be accepted.  You will have

UNITED STATES DISTRICT COURT

1    14 days to object to my report.  If you do not object to my

2    report, in all likelihood, your guilty plea will be accepted,

3    and, next, your case will be scheduled for sentencing.

4            Do you understand that?

5            **THE DEFENDANT:**  Yes, I do, Judge.

6            **THE COURT:**  If your guilty plea is accepted, what I

7    want to explain to you now is that your case will be scheduled

8    for sentencing before the district judge, Judge Barber.  To aid

9    Judge Barber in sentencing you, he'll order a probation officer

10   to begin a presentence investigation and prepare a report for

11   his use.  That report will help him decide what sentence to

12   give you.

13           Do you agree with probation beginning a presentence

14   investigation and preparing a report for Judge Barber's use,

15   Mr. Buonocore?

16           **THE DEFENDANT:**  Yes, I do, Judge.

17           **THE COURT:**  Mr. Bieber, do you agree as well?

18           **MR. BIEBER:**  Not only do we agree, we have the

19   interview set up for next week already, Judge.

20           **THE COURT:**  Very well.

21           All right.  Let me ask Ms. Thelwell, do you have

22   anything further, and, also, were you able to see and hear well

23   at the hearing today?

24           **MS. THELWELL:**  Nothing further from the government,

25   and I was able to see and hear the entire hearing.

1          **THE COURT:**  Mr. Bieber, do you have anything further,

2    and were you able to see and hear well?

3          **MR. BIEBER:**  No, yes, and yes.

4          **THE COURT:**  Thank you.

5          Mr. Buonocore, were you able to see and hear well?

6          **THE DEFENDANT:**  Yes, I was, Judge.

7          **THE COURT:**  All right.  We're joined here also with

8    our official court reporter.  Were you able to see and hear

9    well?

10          **THE REPORTER:**  Yes, Your Honor.

11          **THE COURT:**  Thank you.  We are in recess as to this

12    matter.

13       (Proceedings adjourned at 3:11 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    **CERTIFICATE OF REPORTER**

2    STATE OF FLORIDA

3    COUNTY OF HILLSBOROUGH

4            I, Rebekah M. Lockwood, RDR, CRR, do hereby certify

5    that I was authorized to and did stenographically report the

6    foregoing proceedings; and that the foregoing pages constitute

7    a true and complete computer-aided transcription of my original

8    stenographic notes to the best of my knowledge, skill, and

9    ability.

10       I further certify that I am not a relative, employee,

11   attorney, or counsel of any of the parties, nor am I a relative

12   or employee of any of the parties' attorneys or counsel

13   connected with the action, nor am I financially interested in

14   the action.

15       IN WITNESS WHEREOF, I have hereunto set my hand at Tampa,

16   Hillsborough County, Florida, this 24th day of March 2022.

17

18

19

20

21       REBEKAH M. LOCKWOOD, RDR, CRR
         Official Court Reporter
22       United States District Court
         Middle District of Florida
23

24

25